Michael J. HASON, M.D.,
Plaintiff–Appellant,

v.

MEDICAL BOARD OF CALIFORNIA; Department of Consumer Affairs, State Of California; Arlene Adams, the Director of the Department of Consumer Affairs of the State of California; Neil Fippin, individually, & as the Manager, Licensing Program of the Medical Board of the State of California; Melinda Acosta, individually & as an official of the Medical Board of the State of California; Ron Joseph, individually & as Executive Director of the Medical Board of the State of California & as Director of the Department of Consumer Affairs of the State of California; Bruce Hasenkamp, individually & as President of the Division of Licensing of the Medical Board of the State of California; Ira Lubell, M.D., individually & as President of the Division of Medical Quality of the Medical Board of the State of California; Carole H. Hurvitz; Anabel A. Imbert; Raquel D. Arias, Dr.; Klea D. Bertakis, Dr.; Jack Bruner, Dr.; Daniel Livingston; Karen McElliot; Alan E. Shumacher, Dr.; Kip S. Skidmore, individually & as Member of the Medical Board of the State of California's Division of Medical Quality; Thomas A. Joas, Dr.; Karen McElliott, individually & as Officer of the Medical Board of the State of California & its Division of Licensing; Bernard Alpert, individually & as Officer of the Medical Board of the State of California & its Division of Licensing; Michael I. Sidley, individually & as Executive of the Medical Board of the State of California's Division of Licensing; Raja Toke, Dr., individually & as Executive

of the Medical Board of the State of California's Division of Licensing; The State of California & Senior Investigator, Defendants–Appellees.

Michael J. Hason, M.D.,
Plaintiff–Appellant,

v.

Medical Board of the State of California; Department of Consumer Affairs, State of California; Arlene Adams, the Director of the Department of Consumer Affairs of the State of California; Neil Fippin, individually and as the Manager, Licensing Program of the Medical Board of the State of California; Melinda Acosta, individually and as an official of the Medical Board of the State of California; Ron Joseph, individually and as Executive Director of the Medical Board of the State of California and as Director of the Department of Consumer Affairs of the State of California; Bruce Hasenkamp, individually and as President of the Division of Licensing of the Medical Board of the State of California; Ira Lubell, M.D., individually and as President of the Division of Medical Quality of the Medical Board of the State of California; Carole H. Hurvitz; Anabel A. Imbert; Raquel D. Arias, M.D.; Klea D. Bertakis, M.D.; Jack Bruner, M.D.; Daniel Livingston; Karen Mcelliott; Alan E. Schumacher, M.D.; Kip S. Skidmore, individually and as Members of the Medical Board of the State of California's Division of Medical Quality; Thomas A. Joas, M.D.; Karen Mcelliott, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; Bernard Alpert, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; Michael I. Sidley, individually and as Executive of the Medical

Board of the State of California's Division of Licensing; Raja Toke, M.D., individually and as Executive of the Medical Board of the State of California's Division of Licensing; The State of California; Senior Investigator; Medical Board of California, Defendants–Appellees.

Nos. 00–55784, 00–55980.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Filed Feb. 12, 2002.

Erwin Chemerinsky, University of Southern California Law School, Los Angeles, CA, for the plaintiff-appellant.

Joel A. Davis, Supervising Deputy Attorney General, Los Angeles, CA, for the defendants-appellees.

Before: GOODWIN, WALLACE and THOMAS, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge.

Dr. Michael J. Hason appeals the dismissal of his pro se complaint alleging discrimination based on disability in violation of the United States Constitution and Title II of the Americans with Disabilities Act ["ADA"]. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow we reverse and remand.

### BACKGROUND

In March of 1995, Michael J. Hason, M.D., applied for a license to practice medicine in the state of California. In April of

1998, the California Medical Board denied, for reasons of mental illness, Dr. Hason's application for a medical license. Dr. Hason subsequently filed a pro se complaint in federal district court alleging violations of his rights under the United States Constitution (brought pursuant to 42 U.S.C. § 1983) and Title II of the ADA, 42 U.S.C. § 12132. The complaint also alleged state law tort claims which are not at issue on this appeal.

Dr. Hason's complaint named as defendants The Medical Board of the State of California ["The Medical Board"], the Department of Consumer Affairs of the State of California and its director, and various other individuals that were either members of or otherwise affiliated with the Medical Board (in both their official and personal capacities). Dr. Hason sought both damages and injunctive relief.

On April 25, 2000, the District Court dismissed Dr. Hason's complaint without prejudice as to the individual defendants in their personal capacities, and with prejudice as to the two named state agencies and the individual defendants in their official capacities. The Report and Recommendation of the United States Magistrate Judge, which was affirmed in its entirety by the District Court, stated three reasons for dismissing Dr. Hason's complaint. First, the Report concluded that Dr. Hason's claims were barred by the Eleventh Amendment. Second, the Report concluded that Dr. Hason failed to state a claim upon which relief could be granted under Title II of the ADA. Third, the Report concluded that Dr. Hason's claims against the individual defendants in their personal capacities should be dismissed for failure to prosecute.

We review de novo the District Court's dismissal of a complaint for failure to state a claim upon which relief can be granted. *See NL Indus. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

## DISCUSSION

### I. Sovereign Immunity

 We begin by considering whether the District Court erred in holding that Dr. Hason's claims were barred by the Eleventh Amendment. The Eleventh Amendment prohibits a private party from suing a nonconsenting state or its agencies in federal court.[1] *See Board of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment does not, however, prevent a private litigant from suing a state or its agencies in federal court where Congress has abrogated state sovereign immunity acting pursuant to section 5 of the Fourteenth Amendment. We have previously held that in enacting Title II of the ADA Congress validly abrogated state sovereign immunity, and thus states and their agencies may be sued pursuant to Title II. *See Dare v. California,* 191 F.3d 1167, 1175 (9th Cir.1999); *Clark v. California,* 123 F.3d 1267, 1270–71 (9th Cir.1997); *see also Patricia v. Lemahieu,* 141 F.Supp.2d 1243, 1248 (D.Haw.2001) (observing that the Ninth Circuit has twice rejected the argument that Congress exceeded its constitutional

---

1. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one

of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

authority in abrogating state sovereign immunity pursuant to Title II of the ADA).

Appellees contend, however, that the Supreme Court's recent decision in *Garrett* overrules both *Clark* and *Dare*. In *Garrett*, the Court held that Congress did not validly abrogate state sovereign immunity in enacting *Title I* of the ADA. *See Garrett*, 531 U.S. at 360, 121 S.Ct. 955. The *Garrett* Court expressly declined to decide whether Congress validly abrogated state sovereign immunity in enacting *Title II* of the ADA. *See id.* at 360 n. 1, 121 S.Ct. 955. We therefore conclude that *Garrett* does not overrule either *Clark* or *Dare*, and that the Eleventh Amendment does not bar Dr. Hason's Title II claims.

■ The District Court also erred in its treatment of Dr. Hason's federal civil rights claims, brought pursuant to 42 U.S.C. § 1983, against the various individual state officials. The District Court held that Dr. Hason's section 1983 claims were barred by the Eleventh Amendment. In so holding, the District Court failed to recognize the long-established exception to Eleventh Amendment immunity carved out by *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The *Ex Parte Young* doctrine provides that the Eleventh Amendment does not bar suits for prospective injunctive relief brought against state officers "in their official capacities, to enjoin an alleged ongoing violation of federal law." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir.2000); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Seminole Tribe of Florida*, 517 U.S. at 73, 116 S.Ct. 1114; *Children's Hosp. and Health Ctr. v. Belshe*, 188 F.3d 1090, 1095 (9th Cir.1999); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir.1997). Dr. Hason's complaint clearly seeks prospective injunctive relief to enjoin the individual defendants' refusal to issue Dr. Hason a medical license. Thus, under the doctrine of *Ex Parte Young*, Dr. Hason's section 1983 claims seeking prospective injunctive relief from the individual defendants are not barred by the Eleventh Amendment. The District Court erred in concluding otherwise.

## II. Title II of the ADA

■ We next consider the District Court's dismissal of Dr. Hason's complaint for failure to state a claim for which relief can be granted under Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The District Court dismissed Dr. Hason's complaint based on the magistrate judge's two-fold conclusion that (1) the denial of a medical license cannot be challenged under Title II of the ADA because a medical license does not constitute "services, programs, or activities of a public entity" and (2) Dr. Hason is not a "qualified individual with a disability" within the meaning of Title II of the ADA.

With respect to the first of the two above grounds for dismissal, Dr. Hason contends that his complaint properly states a claim because a medical license constitutes "services, programs, or activities of a public entity" under Title II. Dr. Hason argues that the magistrate judge's interpretation of the phrase "services, programs, or activities" to exclude medical licensing is at odds with both the plain language and remedial goals of Title II.

■ In response, Appellees argue that Title II was not intended to apply to professional licensing. Appellees rely primarily on *Zimmerman v. Oregon Department of Justice*, 170 F.3d 1169 (9th Cir.1999).

In *Zimmerman,* the plaintiff brought an action against his employer alleging that the employer's practices discriminated against him in violation of Title II of the ADA. This Court affirmed the district court's holding that Title II of the ADA does not apply to employment. *See id.* at 1184. In doing so, we conducted a thorough examination of both the wording of Title II and the structure of the ADA, concluding that Congress intended for Title II to apply only to the "outputs" of a public agency, not to "inputs" such as employment. *See id.* at 1173–79.[2]

Relying on *Zimmerman,* Appellees contend that medical licensing does not fall within the scope of Title II because medical licensing is not an "output" of a public agency. According to Appellees, medical licensing is not an "output" because it is a service provided for the benefit of the *public at large,* not for the benefit of *applicants* seeking to obtain medical licenses. *See Alexander v. Margolis,* 921 F.Supp. 482, 488 (W.D.Mich.1995) (observing that "[t]he Board of Medicine is, if anything, a service, program or activity provided for the public's benefit and safety, not for the benefit of any given individual who does not meet the state's requirements for practicing medicine").

■ We are not persuaded by Appellees' argument. Viewed in the light of the *Zimmerman* framework, medical licensing is an output of a public agency, not an input such as employment. The act of licensing involves the Medical Board (i.e. a "public agency") providing a license (i.e.

providing a "service") to an applicant for a medical license. Although medical licensing does occur within the employment context, medical licensing is not equivalent to employment. The Medical Board does not make employment decisions, and the Board's grant of a license is not tantamount to a promise or guarantee of employment as a physician.

Furthermore, the magistrate judge's narrow construction of the phrase "services, programs, or activities" is at odds with the remedial goals underlying the ADA. *See Arnold v. United Parcel Serv., Inc.,* 136 F.3d 854, 861 (1st Cir.1998) (observing that the ADA is a remedial statute which should be construed broadly); *Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996) (same); *see also Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) (recognizing the "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"). Courts must construe the language of the ADA broadly in order to effectively implement the ADA's fundamental purpose of "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Arnold,* 136 F.3d at 861 (quoting 42 U.S.C. § 12101(b)(1) (1994)). In fact, this court has already capitalized upon the opportunity to construe broadly the language of Title II. In *Lee v. City of Los Angeles* we stated in the Title II context that "the ADA's broad language brings within its

2. The *Zimmerman* court illuminated the "input"/"output" distinction with the following example: "[C]onsider how a member of the public would answer the question, 'What are the services, programs, and activities of the Parks Department in which you want to participate, or whose benefits you seek to receive?' The individual might answer, 'I want to participate in the Wednesday night basketball league, or find out about the free chil-

dren's programs for the summer months.' The individual would not logically answer, 'I want to go to work for the Parks Department.' " *Zimmerman,* 170 F.3d at 1174. The *Zimmerman* court considered both the basketball league and the children's programs to be "outputs," and it considered an individual going to work for the Parks Department to be an "input."

scope anything a public entity does." *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir.2001) (citation and internal quotations omitted). Medical licensing is without a doubt something that the Medical Board "does." As such, we conclude that medical licensing clearly falls within the scope of Title II.[3]

The second major reason given by the magistrate judge for dismissing Dr. Hason's Title II claims was that Dr. Hason was not a "qualified individual with a disability" within the meaning of Title II of the ADA. Title II defines this requirement as follows:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

Dr. Hason argues that the District Court erred in accepting the magistrate judge's conclusion because the question of whether Dr. Hason is a qualified individual with a disability is a factual question that should not be resolved on a 12(b)(6) motion to dismiss. In response, Appellees contend that Dr. Hason is not a "qualified individual with a disability" because Dr. Hason admits in his pleadings that he suffers from a mental disability.

Although at a later stage in the proceedings Appellees might demonstrate that Dr. Hason is not a qualified individual with a disability, they have not yet done so. Appellees are correct that Dr. Hason states in his complaint that he suffers from a mental disability. Dr. Hason's complaint also alleges, however, that by the time of the Medical Board's decision he had received treatment for his disability and was capable of practicing medicine. Accepting these allegations as true and construing them in the light most favorable to Dr. Hason, we conclude that Dr. Hason adequately alleges that he is a qualified individual with a disability. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989) (stating that, in reviewing district court's dismissal for failure to state a claim pursuant to Rule 12(b)(6), appellate court accepts plaintiff's allegations as true and construes complaint in light most favorable to plaintiff).

For the foregoing reasons, we conclude that Dr. Hason states claims for which relief can be granted under Title II of the ADA. The District Court erred in dismissing his complaint pursuant to Rule 12(b)(6).

**3.** Dr. Hason also argues that, regardless of whether a medical license constitutes a service, program, or activity of a public entity, his complaint states a claim under Title II of the ADA. As noted above, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination by any such entity.*" 42 U.S.C. § 12132 (emphasis added). Dr. Hason construes the second clause of Title II (i.e. "or be subjected to discrimination by any such entity") as providing a blanket cause of action for any type of discrimination by a public entity, including discrimination not related to the services, programs or activities of a public entity. Because we conclude that medical licensing is a service, program, or activity of a public entity within the meaning of Title II, we need not reach the merits of Dr. Hason's argument. For the sake of clarity, however, we note that in *Zimmerman* we ruled out Dr. Hason's proposed construction of the second clause of Title II. *See Zimmerman*, 170 F.3d at 1176 (concluding that the second clause of Title II, like the first, prohibits discrimination only in a public entity's outputs).

### III. Failure to Prosecute

 Dr. Hason next argues that the District Court abused its discretion in dismissing his claims, for failure to prosecute, against the individual defendants in their personal capacities. In recommending that Appellant's suit be dismissed for failure to prosecute, the magistrate judge relied on Federal Rule of Civil Procedure 4(m). Rule 4(m) provides that, if process is not served within 120 days after the filing of the complaint, and the plaintiff cannot show good cause why service was not made within that time, the action is subject to dismissal without prejudice upon the court's own initiative with notice to the plaintiff. The magistrate judge noted that Dr. Hason failed to effectuate service of process on the named individual defendants within 120 days after the filing of his complaint. Dr. Hason also failed to respond to an order to show cause why service had not been made within the 120 day period.

Dr. Hason does not dispute these facts. Rather, he argues that he had determined that the individual defendants were not liable and that he wanted them to be dismissed as defendants. He assumed that he was furthering this goal and helping the court by not responding to the order to show cause. However, when it became clear that the state agencies were going to be dismissed as defendants, Dr. Hason decided that he no longer wanted the individual defendants to be dismissed. Dr. Hason's argument lacks merit, and we conclude that the District Court did not abuse its discretion in dismissing, for failure to prosecute, Dr. Hason's claims against the individual defendants in their personal capacities.

### IV. Conclusion

In conclusion, we hold that (1) Dr. Hason's Title II claims are not barred by the Eleventh Amendment; (2) Dr. Hason's section 1983 claims seeking prospective injunctive relief against the individual defendants in their official capacities are not barred by the Eleventh Amendment; (3) Dr. Hason states valid claims under Title II of the ADA; and (4) the District Court did not abuse its discretion in dismissing for failure to prosecute Dr. Hason's claims against the individual defendants in their personal capacities.

We accordingly remand to the District Court for consideration of the merits of Dr. Hason's ADA claims. The District Court did not rule on the merits of Dr. Hason's section 1983 claims, so they too must be remanded.

REVERSED and REMANDED.