294 F.3d 1166
 Michael J. HASON, M.D., Plaintiff-Appellant,
v.
MEDICAL BOARD OF CALIFORNIA; Department of Consumer Affairs, State of California; Arlene Adams, the Director of the Department of Consumer Affairs of the State of California; Neil Fippin, individually, & as the Manager, Licensing Program of the Medical Board of the State of California; Melinda Acosta, individually & as an official of the Medical Board of the State of D.C. No. California; Ron Joseph, individually & as Executive Director of the Medical Board of the State of California & as Director of the Department of Consumer Affairs of the State of California; Bruce Hasenkamp, individually & as President of the Division of Licensing of the Medical Board of the State of California; Ira Lubell, M.D., individually & as President of the Division of Medical Quality of the Medical Board of the State of California; Carole H. Hurvitz; Anabel A. Imbert; Raquel D. Arias, Dr.; Klea D. Bertakis, Dr.; Jack Bruner, Dr.; Daniel Livingston; Karen McElliot; Alan E. Shumacher, Dr.; Kip S. Skidmore, individually & as Member of the Medical Board of the State of California's Division of Medical Quality; Thomas A. Joas, Dr.; Karen McElliott, individually & as Officer of the Medical Board of the State of California & its Division of Licensing; Bernard Alpert, individually & as Officer of the Medical Board of the State of California & its Division of Licensing; Michael I. Sidley, individually & as Executive of the Medical Board of the State of California's Division of Licensing; Raja Toke, Dr., individually & as Executive of the Medical Board of the State of California's Division of Licensing; The State of California & Senior Investigator, Defendants-Appellees.
Michael J. Hason, M.D., Plaintiff-Appellant,
v.
Medical Board of the State of California; Department of Consumer Affairs, State of California; Arlene Adams, the Director of the Department of Consumer Affairs of the State of California; Neil Fippin, individually and as the Manager, Licensing Program of the Medical Board of the State of California; Melinda Acosta, individually and as an official of the Medical Board of the State of California; Ron Joseph, individually and as Executive Director of the Medical Board of the State of California and as Director of the Department of Consumer Affairs of the State of California; Bruce Hasenkamp, individually and as President of the Division of Licensing of the Medical Board of the State of California; Ira Lubell, M.D., individually and as President of the Division of Medical Quality of the Medical Board of the State of California; Carole
H. Hurvitz; Anabel A. Imbert; Raquel D. Arias, M.D.; Klea D. Bertakis, M.D.; Jack Bruner, M.D.; Daniel Livingston; Karen McElliott; Alan E. Schumacher, M.D.; Kip S. Skidmore, individually and as Members of the Medical Board of the State of California's Division of Medical Quality; Thomas A. Joas, M.D.; Karen McElliott, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; Bernard Alpert, individually and as Officer of the Medical Board of the State of California and its Division of Licensing; Michael I. Sidley, individually and as Executive of the Medical Board of the State of California's Division of Licensing; Raja Toke, M.D., individually and as Executive of the Medical Board of the State of California's Division of Licensing; The State of California; Senior Investigator; Medical Board of California, Defendants-Appellees.
 No. 00-55784.
 No. 00-55980.
 United States Court of Appeals, Ninth Circuit.
 June 26, 2002.
 
 Before GOODWIN, WALLACE and THOMAS, Circuit Judges.
 
 ORDER
 
 1
 Judge Thomas has voted to deny the petition for rehearing en banc, and Judges Goodwin and Wallace recommended denial.
 
 
 2
 The full court has been advised of the petition for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.
 
 
 3
 The petition for rehearing en banc is DENIED.
 
 
 4
 O'SCANNLAIN, Circuit Judge, with whom Circuit Judges KOZINSKI, T.G. NELSON, and KLEINFELD join, dissenting from denial of rehearing en banc.
 
 
 5
 Stubbornly extending enforcement of Title II of the Americans with Disabilities Act ("ADA") against the Nine Western States, today's opinion blithely ignores recent Supreme Court precedent and follows superseded cases of our court instead. It bears repeating: This decision cannot possibly be right. See Vinson v. Thomas, 288 F.3d 1145, 1157-58 (9th Cir.2002) (O'Scannlain, J., dissenting); see also Douglas v. Cal. Dep't of Youth Auth., 285 F.3d 1226, 1226-27 (9th Cir.2002) (O'Scannlain, J., dissenting from denial of rehearing en banc). Because Hason all but invites a grant of certiorari and reversal for putting us out of step with the Supreme Court and creating a split with every other circuit to have considered the issue, I must dissent from the order denying en banc rehearing.
 
 
 6
 * This opinion reaffirms two prior decisions of this court — Dare v. California, 191 F.3d 1167 (9th Cir.1999), and Clark v. California, 123 F.3d 1267 (9th Cir.1997) — which concluded that Title II validly abrogated the sovereign immunity of the several States. See Hason v. Med. Bd., 279 F.3d 1167, 1170-71 (9th Cir.2002). In so doing, however, it refuses to deal in a meaningful way with intervening Supreme Court precedent, specifically Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This, in a nutshell, is where Hason goes astray.
 
 
 7
 A bit of history is required to see clearly the misstep that this opinion takes.
 
 
 8
 * It is beyond dispute that recent decisions of the Supreme Court, including Garrett, have fundamentally changed the landscape of Eleventh Amendment jurisprudence. See, e.g., William A. Fletcher, The Eleventh Amendment: Unfinished Business, 75 Notre Dame L. Rev. 843, 843-44 (2000). Garrett in particular clarified, in extensive detail, the approach that a court must take when addressing a claim that the ADA validly abrogated State sovereign immunity pursuant to section 5 of the Fourteenth Amendment.[1] Garrett drew on City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), which made clear that it was up to the courts to "define the substance of [the] constitutional guarantee[]" that Congress purported to enforce, Garrett, 531 U.S. at 365, 121 S.Ct. 955 (citing Boerne, 521 U.S. at 519-24, 117 S.Ct. 2157), and that "§ 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit `congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end,'" id. (citing Boerne, 521 U.S. at 520, 117 S.Ct. 2157). But Garrett also elaborated on the Boerne analysis. For instance, Garrett made clear that once a court has "determined the metes and bounds of the constitutional right in question," it must examine "whether Congress identified a history and pattern of unconstitutional ... discrimination by the States against the disabled." Garrett, 531 U.S. at 368, 121 S.Ct. 955 (emphasis added). A showing of discrimination against the disabled in general, or discrimination by local governments rather than the States themselves, will not do. Id. at 368, 121 S.Ct. 955 ("Just as § 1 of the Fourteenth Amendment applies only to actions committed `under color of state law,' Congress' § 5 authority is appropriately exercised only in response to state transgressions."); id. at 368-69, 121 S.Ct. 955 (explaining that "[i]t would make no sense to consider constitutional violations on" the part of local governments "when only the States are the beneficiaries of the Eleventh Amendment").
 
 
 9
 Moreover, Garrett makes clear that generalizations about disability discrimination and how the ADA is designed to remedy it are inadequate; instead, a court must "dissect[] the statutory regime in question and carefully compare[] it to the baseline definition of constitutional action under the Fourteenth Amendment." Reickenbacker v. Foster, 274 F.3d 974, 981 (5th Cir.2001). Indeed, "Garrett specifically focused on the burdens of proof, exceptions, and defenses available in Title I of the ADA in order to find that `the rights and remedies created by the ADA against the States raise the same sort of concerns as to congruence and proportionality as were found in [Boerne].'" Id.
 
 B
 
 10
 Garrett, then, refined the abrogation inquiry set out in Boerne. Regrettably, however, both cases on which Hason relies — Clark and Dare — were handed down before Garrett was decided. Accordingly, they do not undertake the searching inquiry that Garrett requires.
 
 
 11
 * In Clark, we concluded that the ADA, as a whole, validly abrogated the States' sovereign immunity.[2] We first recognized, correctly, that in Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the Supreme Court "held that the disabled are protected against discrimination by the Equal Protection Clause." Clark, 123 F.3d at 1270. But from there the analysis went astray, at least as seen in hindsight through the lens of Garrett. Reading the ADA at its most general level, we next observed that the purpose of the ADA was "to prohibit discrimination against the disabled," id., and that "Congress explicitly found that persons with disabilities have suffered discrimination," id. Consequently, we decided that the ADA was "within the scope of appropriate legislation under the Equal Protection Clause as defined by the Supreme Court," id., and added as a general afterthought that the Act does not "provide[] remedies so sweeping that they exceed the harms that they are designed to redress." Id. We therefore concluded that the ADA was "validly enacted under the Fourteenth Amendment." Id.
 
 
 12
 This minimalist analysis is a far cry from the detailed approach mandated by Garrett; its infirmities are manifest. It is devoid of any discussion whatsoever of legislative findings of discrimination by States — and specifically, by States rather than by local governments. Nor does it analyze any of the specific provisions of Title II to arrive at its sweeping conclusion that Title II does not provide remedies so sweeping that they exceed the harms that they are designed to redress — let alone does it "lay them next to the baseline of what defines constitutional state action under the Fourteenth Amendment," Reickenbacker, 274 F.3d at 981, or "dissect[] the statutory regime in question and carefully compare[] it to the baseline definition of constitutional action under the Fourteenth Amendment," id., as Garrett requires.[3]
 
 2
 
 13
 In Dare, we attempted to square Clark's result with the Supreme Court's intervening decision in Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999). But Dare's approach is no more sound than Clark's. Like Clark's, Dare's congruence analysis deals with legislative findings only of discrimination generally — not of discrimination by States. See Dare, 191 F.3d at 1174 ("When it enacted the ADA, Congress made specific factual findings of arbitrary and invidious discrimination against the disabled. On the basis of these findings, Congress concluded that the ADA was a necessary legislative response to a long history of arbitrary and irrational discrimination against people with disabilities.") (citation omitted). Dare's proportionality analysis is even less tenable, if one can call it an analysis at all:
 
 
 14
 Having established the ADA's congruence with Congress's power to enforce the Equal Protection Clause, we turn to proportionality. In so doing, we reiterate the importance of deference to Congress in this analysis. The Supreme Court has specifically found protections for people with disabilities to be an area in which Congressional judgment should be given great deference. See [Cleburne, 473 U.S. at 442-43, 105 S.Ct. 3249]. The ADA is thus an appropriate exercise of § 5 powers if Congress enacted it in response to a widespread problem of unconstitutional discrimination that includes state programs and services and if the ADA's provisions are proportional to the scope of that discrimination.
 
 
 15
 As noted above, Congress made extensive factual findings regarding the widespread arbitrary and invidious discrimination which disabled people face. See 42 U.S.C. § 12101(a). The ADA's particular provisions for each sector then indicate specifically the discrimination which is forbidden and the conduct needed to remedy the discrimination. See 42 U.S.C. § 12101 et seq. Although Title II's provisions may prohibit some State conduct which would pass muster under rational basis review, the Title's focus is on eliminating the discrimination outlined in the factual findings.
 
 
 16
 Id. at 1175 (footnotes omitted). Again, this sort of blanket generalization, coupled this time with a generous helping of deference to Congress, stands in stark contrast to the provision-by-provision comparison with the constitutional baseline that Garrett requires.
 
 II.
 
 17
 In light of Garrett, then, it is clear that our pre-Garrett Title II precedents are outdated. Yet Hason refuses to acknowledge this. The discussion in the opinion dealing with abrogation is short; indeed, it comprises all of two paragraphs. See Hason, 279 F.3d at 1170-71. It can be summarized as follows: (1) Clark and Dare held Title II validly abrogated sovereign immunity; (2) Garrett did not expressly deal with Title II; it dealt only with Title I, and reserved judgment on Title II; ergo (3) Clark and Dare are good law.
 
 
 18
 This logic breaks down between steps (2) and (3). To be sure, in Garrett the Court expressly declined to decide whether Congress validly abrogated state sovereign immunity in enacting Title II of the ADA. See Garrett, 531 U.S. at 360 n. 1, 121 S.Ct. 955. But it does not follow that because Garrett did not invalidate Title II, our prior case law upholding it remains relevant. For it is not just the holding of Garrett that matters; we must also be mindful of the approach the Court set forth there. As the foregoing analysis makes clear, the blunt approach taken in Clark and Dare has now been supplanted with a new, more nuanced inquiry. If we are to follow Garrett faithfully, we must re-analyze our prior precedents accordingly.
 
 
 19
 Two of our sister circuits have already recognized as much, and have re-analyzed their pre-Garrett precedents holding that Title II validly abrogated States' sovereign immunity. Each has concluded that Title II did not abrogate sovereign immunity — old circuit precedents to the contrary notwithstanding. See Reickenbacker, 274 F.3d at 981 (concluding that Garrett "effectively overruled" prior circuit precedent holding that Title II validly abrogated State sovereign immunity); Thompson v. Colorado, 278 F.3d 1020, 1034 (10th Cir. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002).
 
 
 20
 Indeed, Hason's holding, that Title II validly abrogated States' sovereign immunity, period, splits us from seven of our peers that have considered the issue in the post-Garrett world. Every one, besides us, has gotten the message that something more nuanced is required; we now stand alone. See Klingler v. Dir., Dep't of Revenue, 281 F.3d 776, 777 (8th Cir.2002) (affirming pre-Garrett decision holding that Title II did not validly abrogate State sovereign immunity); Reickenbacker, 274 F.3d at 983; Thompson, 278 F.3d at 1034; Erickson v. Bd. of Governors of State Colls. and Univs., 207 F.3d 945, 948 (7th Cir.2000) (questioning the continued authority of Crawford v. Indiana Department of Corrections, 115 F.3d 481, 487 (7th Cir.1997), which upheld Title II as a valid abrogation of State sovereign immunity), cert. denied, 531 U.S. 1190, 121 S.Ct. 1187, 149 L.Ed.2d 104 (2001); see also Popovich v. Cuyahoga County Court of Common Pleas, 276 F.3d 808, 812, 815-16 (6th Cir. 2002) (en banc) (agreeing that Title II is not a valid abrogation of sovereign immunity when Congress is enforcing the Equal Protection Clause, but holding that it is permissible when enforcing the Due Process Clause); Garcia v. S.U.N.Y. Health Scis. Center, 280 F.3d 98, 110-12 (2d Cir. 2001) (holding that Title II actions may only be brought against States if the plaintiff can establish that the "violation was motivated by discriminatory animus or ill will based on the plaintiff's disability"); cf. Brown v. N.C. Div. of Motor Vehicles, 166 F.3d 698, 707 (4th Cir.1999) (holding that a regulation enacted pursuant to Title II did not validly abrogate State sovereign immunity).
 
 III
 
 21
 Clark and Dare have gone the way of the dodo bird and the wooly mammoth, overtaken and relegated to extinction by the course of events. "Clark is now outdated — and Douglas wrong — for failing to recognize the change in the legal landscape of sovereign immunity." Douglas, 285 F.3d at 1226-27 (O'Scannlain, J., dissenting from denial of rehearing en banc). As every circuit to have analyzed the issue now agrees (except, of course, ours), in light of Garrett, Title II did not abrogate the Eleventh Amendment immunity of the several States.
 
 
 22
 We should have taken Hason en banc to reconsider, and to overrule, Clark and Dare. I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 To be more precise, inGarrett the Court explicitly addressed only the question of whether Title I of the ADA, 42 U.S.C. § 12111 et seq., which prohibits discrimination against the disabled with regard to employment, validly abrogated the States' sovereign immunity. It did not address whether Title II, 42 U.S.C. § 12131 et seq., which prohibits discrimination against the disabled by public entities, did so. Garrett, 531 U.S. at 360 n. 1, 121 S.Ct. 955. As I will explain in due course, however, it is the approach set forth in Garrett, rather than any specific teachings about Title I or Title II, which is crucial for purposes of my analysis.
 
 
 [2]
 The claims at issue inClark were brought under Title II, but we treated the ADA as a whole. This casts further doubt on the continued validity of the opinion because in Garrett, the Court expressly refused to conflate the separate, detailed inquiries required for each of Title I and Title II. See Garrett, 531 U.S. at 360 n. 1, 121 S.Ct. 955.
 
 
 [3]
 For a recent example of how a court might perform this detailed analysis in light ofGarrett, parsing the legislative history of Title II and measuring its provisions against identified instances of discrimination against the disabled by States, see Panzardi-Santiago v. University of Puerto Rico, 200 F.Supp.2d 1, (D.Puetro Rico 2002) (Delgado-Colon, Magistrate J.). This careful analysis led Magistrate Judge Delgado-Colon to conclude that "[t]he legislative history of the statute, particularly as to Title II, suffers from the same deficiencies identified by the Supreme Court in Kimel [v. Florida Board of Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)] and Garrett." Id. at ___, *10; see also id. at ___, *11 (concluding that "Congress exceeded its authority in abrogating the States' Eleventh Amendment immunity in suits brought pursuant to Title II of the ADA").