**Dossey DOUGLAS, Plaintiff–Appellant,**

v.

**CALIFORNIA DEPARTMENT OF YOUTH AUTHORITY, Defendant–Appellee.**

No. 99–17140.

United States Court of Appeals, Ninth Circuit.

Filed April 12, 2002.

Before: PREGERSON, FERGUSON, and HAWKINS, Circuit Judges.

Order. Dissent by Judge O'SCANNLAIN.

**ORDER**

The panel has voted to deny and reject the suggestion for rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.

The suggestion for rehearing en banc is denied.

O'SCANNLAIN, Circuit Judge, with whom KOZINSKI, KLEINFELD, and RONALD M. GOULD, Circuit Judge, join, dissenting from the denial of rehering en banc:

By failing to rehear *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812 (9th Cir.2001), en banc, we also fail to resolve the conflict between two competing constitutional provisions implicated in this case—namely, the Spending Clause and the Eleventh Amendment. Because I believe that had this important issue received the thoughtful consideration it deserved *Douglas* would have reached a different result, I respectfully dissent from the order denying rehearing en banc.

**I**

Courts which must decide whether a State retains its sovereign immunity after accepting conditioned federal funds are caught between two competing lines of jurisprudence. Under the Supreme Court's approach to the Spending Clause of Article I,[1] Congress has great leeway to place conditions on the funding it gives to the States. *See South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Yet, under the Supreme Court's Eleventh Amendment sovereign immunity jurisprudence, Congress's ability to place affirmative obligations on the States using its Fourteenth Amendment enforcement power is rapidly diminishing. *See, e.g, Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (holding that Title I of the ADA did not validly abrogate States's sovereign immunity); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (holding that the ADEA did not validly abrogate States's sovereign immunity). Each doctrine pulls us in an opposite direction.

*Douglas*, following our precedent *Clark v. California*, 123 F.3d 1267 (9th Cir.1997), holds that by accepting federal funds, California waived its sovereign immunity from suits by individuals under § 504 of the Rehabilitation Act. With respect, I believe

---

1. The Spending Clause empowers Congress to "lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts, and to provide for a common Defense and general welfare of the United States." U.S. CONST. art. I, § 8, cl. 1.

that *Clark* is now outdated—and *Douglas* wrong—for failing to recognize the change in the legal landscape of sovereign immunity and, as I explain below, how that might impact Spending Clause jurisprudence. Furthermore, *Douglas* notably—and regrettably—fails to cite *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98 (2d Cir.2001), a significant post-*Kimel* and *Garrett* case holding that a waiver of sovereign immunity cannot be inferred by mere acceptance of federal funds. In my view, we should have reheard *Douglas* en banc to consider the important constitutional protections embodied in the Eleventh Amendment—especially in light of recent Supreme Court developments.

## II

The California Department of Youth Authority ("CYA") denied Mr. Dossey Douglas employment as a group supervisor because he is color-blind. Mr. Douglas brought a discrimination suit against CYA, claiming that the color vision test violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. The district court granted summary judgment to CYA on the grounds that Douglas failed to exhaust his administrative remedies and that his § 504 claim was filed after the statute of limitations expired.

Before addressing the timeliness of Mr. Douglas's claims, however, our court held that California, by accepting federal funds, waived its sovereign immunity from suits by individuals under § 504 of the Rehabilitation Act. *Douglas*, 271 F.3d at 820. This allowed Mr. Douglas to proceed with his claim in federal court. Had *Douglas* not reached this conclusion, Mr. Douglas

would have had no discrimination claim against California because *Garrett* squarely held that Title I of the ADA did not validly abrogate States's sovereign immunity.

The same analysis would apply to § 504 as well. *See Kilcullen v. N.Y. State Dep't of Labor*, 205 F.3d 77, 82 (2d Cir.2000) ("[T]he validity of abrogation under the twin statutes [ADA and Rehabilitation Act] presents a single question for judicial review."); *see also Reickenbacker v. Foster*, 274 F.3d 974, 983 (5th Cir.2001) (holding that § 504 did not validly abrogate States's sovereign immunity).

*Douglas* reaffirmed *Clark*, which, in an alternative holding spanning only three paragraphs of analysis,[2] held that by accepting federal funds a State waives its immunity from suit in federal court. *Clark* stated that since the Rehabilitation Act "manifests a clear intent to condition a state's participation on its consent to waive its Eleventh Amendment immunity"—and California had accepted federal funds—the State had waived its immunity. *Id.* at 1271. *Douglas*, without recognizing the competing commands of the constitutional provisions at issue, simply "adhere[d] to our decision *Clark*." 271 F.3d at 820.

## III

I respectfully suggest that *Douglas* did not give adequate consideration to the question of whether California waived its sovereign immunity. To establish waiver, Congress must first make it clear that amenability to suit in federal court is a condition of a State accepting federal funds, and, second, the State must make a "clear declaration" that it intends to waive its immunity. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense*

---

**2.** *Clark's* main holding was that Congress validly abrogated States's sovereign immunity when it passed § 504 pursuant to its Fourteenth Amendment enforcement powers. *Ki-*

*mel* and *Garrett* call this holding into serious doubt. *Clark* went on to "note" that by accepting federal funds a State waives its sovereign immunity. 123 F.3d at 1271.

*Bd.,* 527 U.S. 666, 676, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). As *Clark* and *Douglas* recognized, § 504 meets the first requirement. Congress explicitly provided: "[a] state shall not be immune under the Eleventh Amendment … from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d–7(a)(1). *See also Lane v. Pena,* 518 U.S. 187, 200, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (characterizing the language of § 504 as "an unambiguous waiver" of States's sovereign immunity).

Whether Congress clearly required that a State waive its immunity before accepting federal funds (the first inquiry) is *not* the same thing, however, as whether the State clearly declared its knowing waiver (the second inquiry). *Clark* and *Douglas* fail adequately to address the second requirement, which is a key component of ensuring proper respect for a State's constitutional rights.

### A

A State may waive its sovereign immunity by making a " 'clear declaration' that it intends to submit itself" to federal court jurisdiction. *College Sav.,* 527 U.S. at 676, 119 S.Ct. 2219 (quoting *Great N. Life Ins. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944)); *see also Pennhurst State Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (a State's consent to suit must be "unequivocally expressed"). Because a State's decision to waive its immunity must be "altogether voluntary," the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *College Sav.,* 527 U.S. at 675, 119 S.Ct. 2219 (internal quotation marks omitted).

*College Savings* overruled the doctrine of "constructive waiver" found in *Parden v. Terminal Ry.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), which allowed waiver of sovereign immunity "based upon the State's mere presence in a field subject to congressional regulation." *College Sav.,* 527 U.S. at 680, 119 S.Ct. 2219. The "constructive waiver" doctrine is not at issue here, but the Court's recent teachings on how explicit a State's waiver must be are instructive:

> There is a fundamental difference between a State's expressing unequivocally that it waives its immunity and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity. In the latter situation, the most that can be said with certainty is that the State has been put on notice that Congress intends to subject it to suits brought by individuals. That is very far from concluding that the State made an "altogether voluntary" decision to waive its immunity.

*Id.* at 680–81, 119 S.Ct. 2219 (quoting *Beers v. Arkansas,* 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1858)) (emphasis added). As with the waiver of any constitutionally protected right, a State must make an " 'intentional relinquishment or abandonment of a known right or privilege.' " *Id.* at 682, 119 S.Ct. 2219 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Finally, courts must " 'indulge every reasonable presumption *against* waiver' of fundamental constitutional rights." *Id.* (quoting *Aetna Ins. v. Kennedy ex rel. Bogash,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937)) (emphasis added).

Having set forth the standards that guide one portion of the analysis—waiver of sovereign immunity—let us turn to the competing standards that govern the other—the Spending Clause.

### B

When exercising its Article I spending power, Congress may condition its grant of

funds to the States, even by requiring States to take actions that Congress could not directly require them to take, such as waiving their sovereign immunity. *College Sav.*, 527 U.S. at 685, 119 S.Ct. 2219; *Dole*, 483 U.S. at 207, 107 S.Ct. 2793 (Congress may accomplish "objectives not thought to be within Article I's enumerated legislative fields ... through the use of the spending power and the conditional grant of federal funds.") (internal quotation marks and citation omitted). Indeed, "such funds are gifts." *College Sav.*, 527 at 686–87, 119 S.Ct. 2219. Thus, Congress's power to control States's actions through the tightening and/or loosening of the purse strings is great. However, "the financial inducement offered by Congress [cannot] be so coercive as to pass the point at which 'pressure turns into compulsion.'" *Dole*, 483 U.S. at 211, 107 S.Ct. 2793 (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590, 57 S.Ct. 883, 81 L.Ed. 1279 (1937)).

*Douglas* held that by the mere acceptance of Rehabilitation Act funds, California agreed to subject itself to the jurisdiction of the federal courts. Indeed, "acceptance of the funds entails an agreement to the actions [that Congress could not otherwise force the States to take]." *College Sav.* 527 U.S. at 686, 119 S.Ct. 2219. But, is accepting conditioned federal funds a clear and unequivocal waiver of sovereign immunity? After engaging in every reasonable presumption *against* waiver, as we must, can we say that California was making an " 'intentional relinquishment or abandonment of a known right or privilege,'" *id.* at 682, 119 S.Ct. 2219 (quoting *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019), by accepting conditioned funds? *Douglas* ducks this question; had it not done so the result would likely be different.

As I explain below, at the time California allegedly engaged in discriminatory hiring practices and also accepted Rehabilitation Act funds, it did *not know* it possessed the right to resist federal court jurisdiction. Without this knowledge, gleaned *only after* the Supreme Court decided *Garrett*, California's acceptance of funds simply could *not* constitute an unequivocal or intentional abandonment of its Eleventh Amendment rights.

## IV

What makes this case interesting, and what *Douglas* and cases in other circuits (except one) overlook, is the interplay of a § 504 *waiver* with the ADA's *abrogation* of States's sovereign immunity. Until the Supreme Court decided *Garrett* in February 2001, California operated under the reasonable assumption that Title I of the ADA, which provides essentially the same protections for people with disabilities as § 504,[3] effectively *abrogated* its immunity from suits by individuals claiming disability discrimination in state employment.[4]

---

**3.** The ADA has no federal funding requirement, but it is otherwise similar in substance to the Rehabilitation Act, and "cases interpreting either are applicable and interchangeable." *Allison v. Dep't of Corrections*, 94 F.3d 494, 497 (8th Cir.1996). The statute itself states that "[t]he remedies, procedures, and rights" under § 504 are also available under the ADA. 42 U.S.C. § 12133. Furthermore, Congress amended § 504 to expressly incorporate the liability standards of the ADA. *See* Rehabilitation Act Amendments of 1992, Pub.L. No. 102–569, § 506, 106 Stat. 4344,

4428 (1992) (codified at 29 U.S.C. § 794(d)) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act.").

**4.** The ADA explicitly provided that "[a] State shall not be immune under the eleventh amendment ... from an action in [a] Federal or State court of competent jurisdiction for a violation." 42 U.S.C. § 12202.

Indeed, in this Circuit, we have repeatedly held that Title II of the ADA was a permissible exercise of Congress's Fourteenth Amendment enforcement power.[5] *See Hason v. Med. Bd.*, 279 F.3d 1167, 1170–71 (9th Cir.2002); *Dare v. California*, 191 F.3d 1167, 1173 (9th Cir.1999); *Clark*, 123 F.3d at 1270. We have also found that the Rehabilitation Act itself abrogates States's sovereign immunity. *Clark*, 123 F.3d at 1270.[6]

Other circuits, pre-*Garrett*, found Title I of the ADA to constitute a valid abrogation. *See, e.g., Cisneros v. Wilson* 226 F.3d 1113, 1124 (10th Cir.2000) (upholding Title I as applied to the States); *Kilcullen v. New York State Dep't of Labor*, 205 F.3d 77, 81 (2d Cir.2000) (same); *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 193 F.3d 1214, 1218 (11th Cir.1999) (same). When California accepted Rehabilitation Act funds, it could not know it was giving up anything; any immunity it had to surrender was already abrogated by the ADA or Rehabilitation Act itself.

Were this just a question of whether Congress may condition delivery of federal funds upon the waiver of sovereign immunity, there might not be sufficient compulsion to invalidate § 504 as an impermissible exercise of the Spending Clause. *See Bell Atlantic Maryland, Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 292 (4th Cir.) (stating that by accepting Rehabilitation Act funds a State "would clearly understand that ... it was consenting to resolve disputes ... in federal court"),

*cert. granted*, 533 U.S. 928, 121 S.Ct. 2548, 150 L.Ed.2d 715 (2001); *Nihiser v. Ohio Envtl. Prot. Agency*, 269 F.3d 626, 628 (6th Cir.2001) (same); *Jim C. v. United States*, 235 F.3d 1079, 1082 (8th Cir.2000) (en banc) (holding that the conditions imposed on § 504 federal funds did not reach the level of compulsion required by *Dole* ), *cert. denied*, 533 U.S. 949, 121 S.Ct. 2591, 150 L.Ed.2d 750 (2001); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir.2000) (finding the Rehabilitation Act "enforceable in federal court against recipients of federal largess"); *Sandoval v. Hagan*, 197 F.3d 484, 494 (11th Cir.1999) (same), *overruled on other grounds*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *see also Pederson v. La. State Univ.*, 213 F.3d 858, 875–76 (5th Cir.2000) (holding that by accepting federal funds a State waives its sovereign immunity defense to Title IX actions); *Litman v. George Mason Univ.*, 186 F.3d 544, 554–55 (4th Cir.1999) (same); *but see Jim C.*, 235 F.3d at 1085 (Bowman, J., dissenting) ("The [Supreme] Court's holdings in [recent Eleventh Amendment] cases reflect the rock-solid principle that Eleventh Amendment immunity trumps any exercise of the powers of Congress enumerated in the original Constitution; controlling weight must be given to the provision that became part of the Constitution later in time.").

Indeed, if it does not like the strings attached, a State need not accept Congress's funds. Even where there is no showing of compulsion, there still remains

---

**5.** Title I prohibits employment discrimination against qualified individuals on the basis of their disability, 42 U.S.C. § 12112, and Title II prohibits discrimination in the provision of public services and programs, 42 U.S.C. § 12132.

**6.** *Garrett's* reasoning undoubtedly undercuts the Rehabilitation Act's attempt to abrogate sovereign immunity. *See Reickenbacker*, 274 F.3d at 983; *Kilcullen*, 205 F.3d at 82 (sug-

gesting that the Rehabilitation Act's legislative history is less compelling than that of the ADA); *see also Armstrong v. Davis*, 275 F.3d 849, 862 n. 17 (9th Cir.2001); Roger C. Hartley, *Enforcing Federal Civil Rights Against Public Entities After* Garrett, 28 J.C. & U.L. 41, 89 n. 272 (2001) ("There is no reason to believe that the Rehabilitation Act's legislative history better supports a pattern of state employment discrimination than does that of the ADA Title I.").

the requirement that a State unequivocally abandon a *known* right. Until *Garrett* was decided, however, California *could not have known* that its sovereign right to resist federal court jurisdiction still existed. How could a State waive that which has already been abrogated by Congress?

V

Recently, the Second Circuit in *Garcia* spotted this problem and dealt with it, as we should have, consistent with the post-*Garrett* legal landscape. Noting that the proscriptions of the ADA and § 504 are virtually identical, it held that "a state accepting conditioned federal funds could not have understood that in doing so it was actually abandoning its sovereign immunity from private damages suits, since by all reasonable appearances state sovereign immunity had already been lost." 280 F.3d at 114 (internal citations omitted). *Garcia* dismissed the § 504 claim on sovereign immunity grounds.

Unlike *Garcia*, other circuits' decisions, cited above, do not reconcile the tension between Spending Clause and sovereign immunity jurisprudence. *Garcia's* approach is faithful to both constitutional provisions and recognizes that Congress may condition delivery of funds upon a waiver of sovereign immunity, yet respects the Supreme Court's teachings, recently articulated in *College Savings*, that a waiver of a constitutional right must be intentional and knowing.

Unfortunately, *Douglas* did not cite *Garcia* and failed to recognize that what might *now* be a known right did not exist in any meaningful sense until quite recently. Blind adherence to our 1997 decision in *Clark* is misguided. *Douglas's* failure to give proper weight to the requirement that a waiver of a constitutional right be intentional and knowing, renders the decision incomplete, incorrect, and in need of reconsideration en banc.

VI

This issue—in the cross-hairs of two constitutional provisions and squarely presented in *Douglas*—deserved close and careful reconsideration in light of recent Supreme Court precedent. I respectfully dissent from this unfortunate order denying rehearing en banc.