MIRANDA B.; Hannah C.; Jamie G.; Jong K.; Joanne K.; James R.; James R.; George P.; Anthony G.; Juan S.; Leonard P., individually and on behalf of all others similarly situated, Plaintiffs–Appellees,

United States of America, Intervenor,

v.

John KITZHABER, Governor of the State of Oregon; Oregon Department of Human Services; Bob Mink, Director of the Oregon Department of Human Services, Defendants–Appellants.

No. 01–35950.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2003.

Filed May 14, 2003.

Janet A. Metcalf, Assistant Attorney General, Salem, Oregon, argued the cause for the defendant-appellant and filed briefs; Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, were on the briefs.

Kathleen L. Wilde, Oregon Advocacy Center, Portland, Oregon, argued the cause for the plaintiffs-appellees; Stephen J. Mathieu, Oregon Advocacy Center, and Kent B. Thurber, Davis, Wright Tremaine, L.L.P., Portland, Oregon, filed a brief.

Kevin Russell, Attorney, Civil Rights Division, U.S. Department of Justice, Washington, D.C., argued the cause for the United States as Intervenor and filed a brief; Ralph F. Boyd, Jr., Assistant Attorney General, Jessica Dunsay Silver, Seth M. Galanter, Attorneys, Civil Rights Division, U.S. Department of Justice, were on the brief.

Before O'SCANNLAIN, FERNANDEZ, and FISHER, Circuit Judges.

Per Curiam Opinion; Concurrence by Judge O'SCANNLAIN

## OPINION

PER CURIAM.

We must decide whether the Eleventh Amendment bars claims against the State of Oregon under the Americans with Disabilities Act and the Rehabilitation Act, and whether these statutes, in turn, bar claims against state officials.

### I

The Plaintiffs are ten individuals with mental illness (collectively or individually "Miranda B.") who are institutionalized in state psychiatric hospitals in Oregon. Miranda B. brought claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–65 ("Title II"), for failing to provide community-based treatment and for unnecessary institutionalization, and under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") for failing to provide services in the most integrated setting. Miranda B. named the Oregon Department of Human Services ("DHS"), its director, Bob Mink, and Oregon's Governor, John Kitzhaber (collectively "the State") as defendants. In her complaint, Miranda B. alleges that she has been assessed by the State's treating professionals as being ready for discharge to a community placement for a period of months, but has remained institutionalized due to a lack of a sufficient number of community-based programs. Miranda B. also brought a claim under *Ex parte Young* against Mink and Kitzhaber in their official capacities, seeking prospective injunctive relief for less restrictive confinement, and claims under 42 U.S.C. § 1983 against DHS and against Mink and capacities, for money damages based on violations of her due process right to less restrictive confinement.

The State filed a motion to dismiss Miranda B.'s first amended complaint, arguing that Congress did not validly abrogate

its Eleventh Amendment immunity under Title II or Section 504, and, therefore, Miranda B.'s claims could not be brought in federal court. The State also claimed that Title II and Section 504 evidenced congressional intent to supersede *Ex parte Young* and § 1983 suits against state officials.

The district court agreed with the State that Miranda B. could not proceed under § 1983 against DHS, but otherwise denied the State's motion. Specifically, the district court concluded that Miranda B.'s Title II and Section 504 claims are not barred by the Eleventh Amendment, that Miranda B.'s claims against the state officials in their official capacity are permissible under *Ex Parte Young*, and that Miranda B.'s § 1983 claims against the individual defendants are permissible because they were based on cognizable due process violations.

The State now appeals the district court's denial of its motion to dismiss.

## II

■ The State acknowledges that under our current precedent, the Eleventh Amendment does not bar Miranda B. from bringing her suit against Oregon in federal court.[1] *See, e.g., Dare v. California,* 191

F.3d 1167, 1175 (9th Cir.1999); *Clark,* 123 F.3d at 1270. Not deterred, the State contends that the Supreme Court's decision in *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), has fundamentally undercut the reasoning of our precedent, and, therefore, must be re-addressed.[2] Although we have revisited our precedent following *Garrett,* the State asks us to distinguish our holdings in these cases because we failed to address the specific arguments it makes. As the State candidly admits, its arguments are an "uphill, if not vertical, challenge." We do not disagree.

### A

■ The Eleventh Amendment prohibits a citizen from suing a state for monetary damages in federal court without its consent.[3] *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Savs. Bank,* 527 U.S. 627, 634–35, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999). However, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional

---

1. Typically, this court does not have jurisdiction to hear an appeal from the denial of a motion to dismiss. *See Figueroa v. United States,* 7 F.3d 1405, 1408 (9th Cir.1993). However, the denial of a state's motion to dismiss on the grounds of Eleventh Amendment immunity is an exception to that general rule. *Id.; Clark v. California,* 123 F.3d 1267, 1269 (9th Cir.1997) ("This court has jurisdiction to hear an interlocutory appeal from an order denying a state's motion to dismiss on the ground of immunity under the Eleventh Amendment." (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993))).

2. The State filed a motion for initial hearing en banc, which was denied September 11, 2002.

3. The Eleventh Amendment states,

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court's] cases have extended the Amendment's applicability to suits by citizens against their own States." *Garrett,* 531 U.S. at 363, 121 S.Ct. 955 (citations omitted).

authority,'" namely its § 5 Fourteenth Amendment powers. *Garrett,* 531 U.S. at 363, 121 S.Ct. 955 (citations omitted), 374. Congress clearly intended to abrogate state immunity under Title II;[4] the question here is whether it "act[ed] pursuant to a valid grant of constitutional authority." *Id.* at 363, 121 S.Ct. 955.

In *Clark,* 123 F.3d at 1270–71, and *Dare,* 191 F.3d at 1174–75, we conducted the necessary congruence and proportionality tests and determined that Title II did not exceed congressional authority under § 5 of the Fourteenth Amendment. Accordingly, we concluded that Congress validly abrogated the states' Eleventh Amendment sovereign immunity under Title II. *Clark,* 123 F.3d at 1270; *Dare,* 191 F.3d at 1175.

The Supreme Court in *Garrett* subsequently held that Congress did not validly abrogate the states' Eleventh Amendment immunity under Title I of ADA, 42 U.S.C. §§ 12111–12117 ("Title I"), which prohibits employers, including states, from discriminating against qualified individuals with disabilities in their employment practices. *See Garrett,* 531 U.S. at 360–61, 374, 121 S.Ct. 955. The Court determined that Congress did not identify a sufficient pattern of state-sanctioned unconstitutional discrimination in order to justify the use of its § 5 authority, and, thus, states were entitled to immunity from suits seeking money damages under Title I in federal court. *See id.* at 374, 121 S.Ct. 955. The Court, however, explicitly deferred any decision regarding state immunity under Title II because it "has somewhat different remedial provisions from Title I." *Garrett,* 531 U.S. at 360 n. 1, 121 S.Ct. 955.

█ Following the Court's decision, we held without reservation that because *Garrett* addressed only Title I of the ADA, the Court had not overruled *Clark's* and *Dare's* essential holding that Congress had validly abrogated state immunity under Title II. *Hason v. Med. Bd. of Cal.,* 279 F.3d 1167, 1171, *reh'g en banc denied,* 294 F.3d 1166 (9th Cir.2002), *and cert. dismissed,* —— U.S. ——, 123 S.Ct. 1779, 155 L.Ed.2d 508, 2003 WL 1792116 (U.S. Apr. 7, 2003) (No. 02–479). And we have thereafter considered ourselves bound by our holding in *Hason. See, e.g., Thomas v. Nakatani,* 309 F.3d 1203, 1209 (9th Cir. 2002) (stating that *Hason* reaffirmed *Clark's* and *Dare's* holding that Congress abrogated sovereign immunity under Title II); *Lovell v. Chandler,* 303 F.3d 1039, 1051 (9th Cir.2002) (same).

█ The State does not allege that intervening Supreme Court precedent has altered *Hason* or its progeny; rather, it merely contends that we did not give due consideration to *Garrett's* holding in deciding *Hason.* We fail to ascribe such a dim view to our previous cases. *Garrett* had been decided, and while we did not specifically address the State's arguments, they were readily apparent. "Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." *Hart v. Massanari,* 266 F.3d 1155, 1171 (9th Cir. 2001). We decline further review of our settled precedent.[5]

## B

The State faces a similarly daunting task in challenging our Section 504 prece-

---

4. *Garrett,* 531 U.S. at 363, 121 S.Ct. 955 (citing 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter")).

5. Accordingly, we need not decide Miranda B.'s alternative argument that Congress validly abrogated state sovereign immunity pursuant to the Due Process Clause.

dent. In *Clark*, not only did we conclude that Congress validly abrogated the states' Eleventh Amendment immunity under Section 504, but we also held that states, by accepting federal funds, waived any Eleventh Amendment immunity they might have possessed. *Clark*, 123 F.3d at 1271. As Miranda B. has correctly pointed out, our practice has been not to reach the ultimate issue of whether Congress validly abrogated state sovereign immunity if we conclude that the State has indeed waived its immunity. *See, e.g., Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 820, *as amended*, 271 F.3d 910 (9th Cir.2001), *and reh'g en banc denied*, 285 F.3d 1226 (9th Cir.2002).

Although the State admits that it accepted federal funds under the Rehabilitation Act and thus, under our precedent, waived its immunity, it argues that intervening Supreme Court precedent has also altered such analysis. In *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), the Supreme Court emphasized that states could waive their Eleventh Amendment immunity by receiving federal funds when receipt of those funds was conditioned on a waiver of sovereign immunity, but that such waivers must be "voluntary." The State contends that its waiver of sovereign immunity was not voluntary because we had previously ruled that Congress had abrogated its immunity. In the State's view, it could not voluntarily waive that which it did not know it possessed.

Its argument has been foreclosed. In *Douglas*, which followed *College Savings*

*Bank*, we determined that we need not reach the more difficult issue of whether Congress validly abrogated the states' Eleventh Amendment immunity under Section 504 because it is clear that a state waives its immunity from suit under the Rehabilitation Act by accepting federal funds. *Douglas*, 271 F.3d at 820. In so doing, we clearly reaffirmed our waiver analysis set forth in *Clark*. *Id.* at 820–21; *see also Vinson v. Thomas*, 288 F.3d 1145, 1151 (9th Cir.2002) (reaffirming *Douglas's* holding that by accepting federal funds, a state waives its sovereign immunity); *Lovell*, 303 F.3d at 1051 (reaffirming that accepting federal funds waives sovereign immunity under section 504).

■ The State contends that we are not bound by *Douglas* because the issue of waiver was not before us and thus can be dismissed as dicta. We decline to dismiss our precedent so lightly. As we have noted before, "where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir.2001) (en banc). We must therefore conclude that, because the State voluntarily accepted federal funds under Section 504, it has waived its right to immunity from suit under the Eleventh Amendment.

### III

■ The State's displeasure with our precedent does not end with our Eleventh Amendment jurisprudence. It also sets its sights on our application of *Ex parte Young*.[6] The State argues that because

---

**6.** We have jurisdiction over this issue pursuant to the collateral order doctrine. *See In re Ellett*, 254 F.3d 1135, 1138 & n. 1 (9th Cir. 2001) (basing jurisdiction on the collateral order doctrine and adjudicating defendant's challenge to the scope of *Ex parte Young* ); *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 n. 2 & 1184–85 (9th Cir. 1997) (same).

Title II prohibits discrimination by a "public entity," and because Title II and Section 504 provide for comprehensive remedies, Miranda B. cannot pursue her *Ex parte Young* claims. *See* 42 U.S.C. § 12132 (prohibiting discrimination by "public entit[ies]"). Furthermore, it claims that because the suit is in effect brought against the sovereign, *Ex parte Young* should not apply. These arguments are addressed in turn.

## A

Of course, we have previously allowed *Ex parte Young* suits to proceed under Title II and Section 504 of the Rehabilitation Act. *See, e.g., Armstrong v. Davis,* 275 F.3d 849, 879 (9th Cir.2001) (holding that "*Garrett* makes clear that . . . there is no barrier to the injunction against Nielson in his official capacity as Secretary of the Board [under the ADA]."); *Armstrong v. Wilson,* 124 F.3d 1019, 1025–26 (9th Cir. 1997) (holding that *Ex parte Young* relief is available under the ADA and the Rehabilitation Act); *Clark,* 123 F.3d at 1271 (same). Moreover, the Supreme Court has endorsed the use of *Ex parte Young* under Title I of the ADA. *See Garrett,* 531 U.S. at 374 n. 9, 121 S.Ct. 955 ("Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by . . . private individuals in actions for injunctive relief under *Ex parte Young* . . . ."). In short, the State's view of *Ex parte Young* is again contrary to much precedent.

### 1

Notwithstanding our practice, we have not directly addressed whether there is a conflict between Title II's use of the term "public entity" and the doctrine of Ex parte Young. The State contends that such specific statutory language in Title II suggests that Congress did not intend to allow *Ex parte Young* actions against state officials: in this case, Miranda B. seeks injunctive relief against individual state officials, who are not public entities. Miranda B. does not dispute that Title II only applies to public entities by its terms, but disagrees with the State's narrow interpretation. The United States has intervened and joins Miranda B. in challenging the State's interpretation.

The Sixth Circuit has addressed and has rejected the State's argument, holding that "an official who violates Title II of the ADA does not represent 'the state' for purposes of the Eleventh Amendment, yet he or she nevertheless may be held responsible in an official capacity for violating Title II, which by its terms applies only to 'public entit[ies].'" *Carten v. Kent State Univ.,* 282 F.3d 391, 396 (6th Cir. 2002) (alteration in original). The Seventh and the Eighth Circuits have similarly arrived at the same conclusion. *See Bruggeman v. Blagojevich,* 324 F.3d 906, 2003 WL 1793049, *5 (7th Cir. Apr.7, 2003); *Randolph v. Rodgers,* 253 F.3d 342, 348 (8th Cir.2001).

█ We agree with our sister circuits. Under *Ex parte Young,* "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This distinction is why "unconstitutional conduct by a state officer may be 'state action' for purposes of the Fourteenth Amendment yet not attributable to the State for the purposes of the Eleventh." *Fla. Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 685, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (citation omitted). We find no difference between declaring that a named officer in her official capacity represents the "State" for purposes of the Fourteenth Amendment, and declaring that the same officer represents a "public entity" under Title II. As such, we follow the Sixth, Seventh, and Eighth Circuits in

holding that Title II's statutory language does not prohibit Miranda B.'s injunctive action against state officials in their official capacities.[7]

### 2

Next, the State argues that, because Title II and Section 504 provide for comprehensive remedies, injunctive relief under *Ex parte Young* is no longer viable. In support of its position, the State relies on *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 74, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), which held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*" In *Seminole Tribe,* the Court concluded that Congress intended to displace *Ex parte Young* actions which would "expose [ ] official[s] to the full remedial powers of a federal court" by creating a comprehensive scheme in which the State was subject to only a "modest set of sanctions." *Id.* at 74–75, 116 S.Ct. 1114. The Court concluded that the "intricate scheme" that Congress set forth would be "superfluous ... when more complete and more immediate relief would be available

under *Ex parte Young.*" *Id.* at 75, 116 S.Ct. 1114.

In *Verizon Maryland, Inc. v. Public Service Commission of Maryland,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), however, the Court refused to apply this reasoning to the Telecommunications Act of 1996. The Court allowed an *Ex parte Young* action against the state commissioners in their official capacity, holding that *Seminole Tribe* was inapplicable because the Act "plac[ed] no restriction on the relief a court [could] award" and it did not "say whom the suit is to be brought against."[8] 535 U.S. at 647, 122 S.Ct. 1753.

The remedial provisions at issue here are similar to those under the Telecommunications Act. Title II is based on the remedial measures of the Rehabilitation Act, which in turn incorporated the remedies in Title VI of the Civil Rights Act of 1964.[9] *See* 42 U.S.C. § 12133 (providing that "remedies, procedures, and rights" for Title II are set forth under Section 504 of the Rehabilitation Act); 29 U.S.C. § 794a(a)(2) (Section 504 of the Rehabilitation Act) (providing that remedies are set forth in Title VI of the Civil Rights Act of 1964). Like the Telecommunications Act, Title VI does not prescribe any specific defendants,[10] nor limit the remedies avail-

---

**7.** The State cited *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (en banc), and *Lollar v. Baker,* 196 F.3d 603, 609 & n. 6 (5th Cir.1999), for the proposition that *Ex parte Young* does not apply under the ADA. In these cases, however, the courts held that officials could not be sued in their *individual* capacities under the ADA; they did not decide whether the state officials could be sued in their *official* capacities and are thus inapposite. Both circuits have allowed *Ex parte Young* actions against officials in their official capacities. *See, e.g., Randolph,* 253 F.3d at 346–48, and *Brennan v. Stewart,* 834 F.2d 1248, 1253–54 (5th Cir.1988).

**8.** Under the Telecommunications Act, "[i]n any case in which a State commission makes

a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court." 47 U.S.C. § 252(e)(6).

**9.** Under Title II, employees and applicants for employment are subject to the remedies, rights, and procedures of 29 U.S.C. § 794a, which incorporates the remedial provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f) to (k). *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(1). These remedies are not at issue in this case.

**10.** Title II limits the applicability of the statute to "public entit[ies]," but the remedial sections make no reference to proper defendants. *See* 42 U.S.C. § 12132. Similarly, the

able against a state or public officials.[11] *See Randolph*, 253 F.3d at 347 (concluding that Title II's remedial provisions, which incorporate Title VI, do not constitute a comprehensive remedial scheme).

▇▇▇▇ Moreover, before the ADA was enacted, other circuits had determined that *Ex parte Young* suits were permissible for violations of Title VI and Section 504. *See, e.g., Brennan*, 834 F.2d at 1253–54 (Section 504 claim can proceed under *Ex parte Young*). Because Congress is presumed to know the law and to have incorporated judicial interpretations when adopting a preexisting remedial scheme, *Cannon v. Univ. of Chi.*, 441 U.S. 677, 697, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), we cannot conclude that Congress intended *Ex parte Young* not to be applicable for violations of Title II or Section 504.

### 3

▇▇▇▇ Finally, the State contends that an *Ex parte Young* claim in this case is truly against it and not public officials. This is the "fiction," however, of all *Ex parte Young* cases. *See, e.g., Ellett*, 254 F.3d at 1138 ("The Court has recognized that the *Ex Parte Young* doctrine is based upon the 'fiction' that a state officer who violates federal law in his official capacity, pursuant to his authority under state law, is nonetheless not a state agent for sovereign immunity purposes." (citation omitted)). We are not concerned under *Ex parte*

*Young* whether the State is the real party at interest; instead, the test for when *Ex parte Young* allows suits against officials to proceed is quite simple: "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon*, 535 U.S. at 645, 122 S.Ct. 1753 (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).

▇▇▇▇ Here, there is no doubt that the relief sought is prospective injunctive relief only, and the State acknowledges as much. Because Miranda B.'s claims "do[ ] not impose upon the State 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials,'" she may proceed under *Ex parte Young*. *Verizon*, 535 U.S. at 646, 122 S.Ct. 1753 (emphasis omitted) (quoting *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).

### IV

In its final argument, the State challenges the district court's denial of its motion to dismiss Miranda B.'s § 1983 claims against Mink and Kitzhaber. The district court concluded that Miranda B.'s com-

---

Telecommunications Act provides a cause of action when "a State [commission] fails to act," but fails to specify particular defendants. 47 U.S.C. § 252(e)(5)-(6).

**11.** Although courts originally interpreted Title VI as implying a private cause of action against a state, Congress later amended the statute to make it explicit. *See Alexander v. Sandoval*, 532 U.S. 275, 279–80, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). In doing so,

Congress evidenced no intent to limit the remedies available against other parties. *See* 42 U.S.C. § 2000d–7(a)(2) ("In a suit against a State for a violation of a statute ... remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.").

plaint raised a cognizable due process claim, separate from a claim under Title II and Section 504, and thus she could proceed against the individual defendants. Before we address the merits of the district court's conclusion, however, we must first determine whether we have jurisdiction over the claim. Unlike the State's claims under the Eleventh Amendment and *Ex parte Young*, we have yet to decide this issue.

The State acknowledges that a denial of a motion to dismiss a § 1983 claim is generally not appealable. The State contends, however, that in this case its appeal falls under the collateral order doctrine because it would improperly subject the State to suit. *See Figueroa,* 7 F.3d at 1408 ("Ordinarily, the denial of a 12(b)(6) motion is not a reviewable final order; it is only when a question of immunity is involved that we use the collateral order doctrine to exercise jurisdiction."). The State's argument is that Miranda B. cannot properly bring equal protection claims against state officials for violating the ADA and Rehabilitation Act because Congress foreclosed § 1983's remedial provisions for those claims. *See Vinson,* 288 F.3d at 1156. Thus, the State concludes that if we were to agree with it, the only redress Miranda B. would have is through a Title II or Section 504 suit against the State directly or against its officials in their official capacities under *Ex parte Young*, both of which it claims are proscribed. According to the State, sovereign immunity is thus implicated or at least inextricably intertwined with the § 1983 claims and provides this court with jurisdiction. We disagree.

Clearly sovereign immunity is not directly implicated: suits brought under § 1983 against *individual* officers in their *individual* capacity for violations of the Constitution do not implicate sovereign immunity. *See, e.g., id.* at 1155 n. 11 ("Vin-

son's individual capacity claim against Thomas does not implicate the State's sovereign immunity under either the ADA or the Rehabilitation Act."). Rather, the State is claiming that Miranda B. failed to make out a valid claim under § 1983 because her claim is premised on Title II and Section 504, which we have held foreclosed a remedy under § 1983. *See id.* at 1156. The "essence" of the State's argument is thus not immunity from suit or a right not to stand trial, but a defense to suit. *See Van Cauwenberghe v. Biard,* 486 U.S. 517, 524, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (noting that " 'the essence' of the claimed right [must be] a right not to stand trial"). Denial of a defense to suit is not immediately appealable. *Cf. Burns–Vidlak v. Chandler,* 165 F.3d 1257, 1261 (9th Cir. 1999) (holding that denial of defense to liability for punitive damages is not immediately appealable); *United States v. Rossman,* 940 F.2d 535, 536 (9th Cir.1991) (per curiam) (denial of motion to dismiss even though claim was time-barred is not appealable).

The State's argument that the claims are inextricably intertwined with its sovereign immunity fares no better. For a panel to have jurisdiction over a claim because it is inextricably intertwined with an appealable issue, the issues must be nearly inseparable. As the Seventh Circuit has described this doctrine, "A close relationship between the unappealable order and the appealable order will not suffice: it must be practically indispensable that we address the merits of the unappealable order in order to resolve the properly-taken appeal." *United States ex rel. Valders Stone & Marble, Inc. v. C–Way Constr. Co.,* 909 F.2d 259, 262 (7th Cir.1990). Here, no such relationship exists. We are addressing only the State's claims of sovereign immunity at this juncture, which are completely separable and

distinct from the merits of the Miranda B.'s § 1983 claim. Because we need not address the merits of this claim to resolve the properly appealable orders, we lack jurisdiction over the issue and do not reach its merits.

## V

For the foregoing reasons, the order of the district court is AFFIRMED and RE-MANDED.

O'SCANNLAIN, Circuit Judge, concurring.

I agree with the State of Oregon that if we had treated the issues at hand in the first instance with the thoughtful consideration that they deserved, we would have reached a different result. Nevertheless, I concur in the court's reasoned decision: our precedent clearly commands the conclusion that Oregon is not entitled to Eleventh Amendment immunity under Title II of the ADA and that the State waived its Eleventh Amendment immunity under Section 504 of the Rehabilitation Act by accepting federal funds.

I write separately not to belabor my reasoning for why I have concluded our precedent is wrong—I have done so in detail elsewhere, see, e.g., Hason v. Med. Bd. of Cal., 294 F.3d 1166 (9th Cir.2002) (O'Scannlain, J., dissenting from denial of rehearing en banc); Douglas v. Cal. Dep't of Youth Auth., 285 F.3d 1226 (9th Cir. 2002) (O'Scannlain, J., dissenting from denial of rehearing en banc)—but rather to state once again that our precedent in these important areas is far out of step with both our sister circuits and the Supreme Court.[1] As I have stated before, "*Clark* and *Dare* have gone the way of the dodo bird and the wooly mammoth, overtaken and relegated to extinction by the course of events. '*Clark* is now outdated—and *Douglas* wrong—for failing to recognize the change in the legal landscape of sovereign immunity.'" *Hason,* 294 F.3d at 1171 (O'Scannlain, J., dissenting from denial of rehearing en banc) (citations omitted). A majority of my colleagues, however, has thus far failed to agree that a sea change has occurred in this area which compels undertaking the more detailed ap-

---

1. *See Hason,* 294 F.3d at 1171 (O'Scannlain, J., dissenting from denial of rehearing en banc) (citing *Klingler v. Dir., Dep't of Revenue,* 281 F.3d 776, 777 (8th Cir.2002) (affirming pre-*Garrett* decision holding that Title II did not validly abrogate State sovereign immunity); *Reickenbacker v. Foster,* 274 F.3d 974, 983 (5th Cir.2001); *Thompson v. Colorado,* 278 F.3d 1020, 1034 (10th Cir.2001); *Erickson v. Bd. of Governors of State Colls. and Univs.,* 207 F.3d 945, 948 (7th Cir.2000) (questioning the continued authority of *Crawford v. Indiana Department of Corrections,* 115 F.3d 481, 487 (7th Cir.1997), which upheld Title II as a valid abrogation of State sovereign immunity), *cert. denied,* 531 U.S. 1190, 121 S.Ct. 1187, 149 L.Ed.2d 104 (2001); *see also Popovich v. Cuyahoga County Court of Common Pleas,* 276 F.3d 808, 812, 815–16 (6th Cir.2002) (en banc) (agreeing that Title II is not a valid abrogation of sovereign immunity when Congress is enforcing the Equal Protection Clause, but holding that it is permissible when enforcing the Due Process Clause);

*Garcia v. S.U.N.Y. Health Scis. Center,* 280 F.3d 98, 110–12 (2d Cir.2001) (holding that Title II actions may only be brought against States if the plaintiff can establish that the "violation was motivated by discriminatory animus or ill will based on the plaintiff's disability"); *cf. Brown v. N.C. Div. of Motor Vehicles,* 166 F.3d 698, 707 (4th Cir.1999) (holding that a regulation enacted pursuant to Title II did not validly abrogate State sovereign immunity)). *See generally Douglas,* 285 F.3d at 1226–31 (O'Scannlain, J., dissenting from denial of rehearing en banc) (citing *College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (A state's decision to waive its immunity must be "altogether voluntary," and, thus, the "test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one."); *Garcia,* 280 F.3d at 110–12 (concluding that state did not waive immunity by accepting federal funds)).

proachs the Supreme Court has demanded of us in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

I had hoped that the Supreme Court would grant us a reprieve from one of our blunders when it granted certiorari last year and scheduled oral argument in *Hason v. Medical Board of California*, 279 F.3d 1167, 1171, *reh'g en banc denied*, 294 F.3d 1166 (9th Cir.2002), *and cert. dismissed*, —— U.S. ——, 123 S.Ct. 1779, 155 L.Ed.2d 508, 2003 WL 1792116 (U.S. Apr. 7, 2003) (No. 02–479), the seminal case in our misguided Title II Eleventh Amendment precedent. Unfortunately, the State of California decided that it no longer wished to present its arguments to the Supreme Court, and petitioned the Court to dismiss its case, which it did. In so doing, the Court foreclosed the chance to consider this important issue for yet another Term, and simultaneously sealed the fate of the State of Oregon here.

I am convinced that the Supreme Court eventually will correct our errors, which we have steadfastly refused to tackle in the first instance; the only question is when. Until such day arrives, however, I am bound by the law of our circuit and therefore concur, no matter my personal view.