CLIFTON, Circuit Judge,
concurring in the judgment:
I agree with my colleagues that the district court properly denied Defendants’ motion for summary judgment based on their qualified immunity defense, and thus I concur in the judgment affirming the decision of the district court. I write separately, however, because I disagree with the majority’s stated conclusion that the Defendants’ actions violated Moreno’s constitutional rights on the theory that reasonable suspicion is required to justify a search or seizure of a parolee, even though the relevant terms of Moreno’s parole would appear to permit a warrantless search or seizure. The majority’s conclusion to that effect is entirely irrelevant to the result reached in this case and should appropriately be disregarded.
Defendants’ motion for summary judgment is based on a claim of qualified immunity. As the majority correctly notes, ante at 1156, the Supreme Court, in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), established a two-step analysis for determining whether a law enforcement officer is entitled to qualified immunity. The first question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, meaning Moreno in the current case, “show the officer’s conduct violated a constitutional right.” Id. The second question is “whether the right was clearly established.” Id. In order to deny Defendants’ summary judgment motion based on a defense of qualified immunity, we must conclude not only that Defendants violated Moreno’s constitutional right, but also that the right at issue was clearly established.
As the majority notes, Defendants have argued that Moreno’s Fourth Amendment rights were not violated by the detention and search in this case because these actions were consistent with Moreno’s parole condition. In order to reach this question, however, the court must first determine whether Defendants can retroactively justify the arrest and search of Moreno based on his parole condition and outstanding arrest warrant, even though the officers were unaware of these facts at the time.
In addressing this question, the majority correctly concludes that
because the Deputies did not know of Moreno’s parole status and his outstanding arrest warrant at the time they searched and seized him, those circumstances cannot justify their conduct. And in any case, at the time of the incident in this case, it was clearly established that the facts upon which the reasonableness of a search or seizure depends, whether it be an outstanding arrest warrant, a parole condition, or any other fact, must be known to the officer at the time the search or seizure is conducted. [Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 *1170 L.Ed.2d 148 (1990); United States v. Luckett, 484 F.2d 89, 90-91 (9th Cir.1973) (per curiam) ].
Ante at 1168. On this basis alone, the court must deny Defendants’ qualified immunity defense, at this stage of the case, and affirm the judgment of the district court. There is no reason to consider whether Plaintiffs parole condition altered his Fourth Amendment rights because Defendants were not aware he was on parole when they conducted the search.
Regardless, the majority reaches out to address this question and to try to announce a new rule of law — specifically, that “the Constitution requires that a law enforcement officer must, at minimum, have a reasonable suspicion that a parolee has engaged in criminal wrongdoing or violated his parole prior to arresting him or conducting a search of his person.” Ante at 1163 (emphasis added). The majority supports its announcement by asserting that in United States v. Knights, 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), the Supreme Court held that “reasonable suspicion was required to search the probationer’s house.”[1] See ante at 1159. That is plainly wrong.
In Knights, the Supreme Court held that “no more than reasonable suspicion” is required to conduct a search of a probationer’s house. 534 U.S. at 121, 122 S.Ct. 587 (emphasis added). Since it had already been determined that reasonable suspicion existed in that case, the Court did not need to consider whether the search in question could be supported by something less. And the Court did not simply leave that for readers to infer. It said as much, in so many words:
We do not decide whether the probation condition so diminished, or completely eliminated, Knights’ reasonable expectation of privacy (or constituted consent) that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment. The terms of the probation condition permit such a search, but we need not address the constitutionality of a suspi-cionless search because the search in this case was supported by reasonable suspicion.
Id. at 120 n. 6, 122 S.Ct. 587 (internal citation omitted). Knights does not support the rule which the majority opinion attempts to build on top of it.
The history of this issue before our court further explains why the majority opinion’s declaration is unnecessary and inappropriate in the current case. In order to hold that Defendants are not entitled to qualified immunity, the court has to determine that Defendants violated a constitutional right that was “clearly established.” See Saucier, 533 U.S. at 195, 201, 121 S.Ct. 2151 (2001). It is impossible to conclude that, at the time of the incident in question, it was clearly established that a parolee had a right to be free of any search or detention that was not supported by reasonable suspicion. The Knights footnote quoted above indicates as much. The Knights decision was announced in December 2001. If the issue remained open at that point in time, the rule of law which the majority opinion in this case purports to apply here surely was not “clearly established” twenty-three months earlier, in January 2000, when the events at issue in this case occurred.
Moreover, the members of our court, including specifically the members who make up the majority in this case, are very aware of that fact, because we have history *1171 with this issue. A three-judge panel of this court issued an opinion in May 2003 which adopted the same view as the majority in this case, that “reasonable suspicion” was required to justify a search of a parolee, despite parole terms which permitted search without such suspicion, and that a search without such reasonable suspicion violated the constitutional right of the parolee. See United States v. Crawford, 323 F.3d 700 (9th Cir.2003). The panel was split 2-to-1, with one judge dissenting. The author of the majority opinion in the current case was one of the two judges who formed the majority in the Crawford three-judge panel opinion. To be sure, that decision was not announced until more than three years after the January 2000 events at issue in this case, so it could not support any claim that the doctrine in question was clearly established at the time relevant to this matter. More importantly, that opinion was set aside when a majority of all the active judges of this court voted to rehear the case en banc. See United States v. Crawford, 343 F.3d 961 (9th Cir.2003). Since the subsequent en banc panel decided not to adopt its reasoning, the opinion of the original three-judge panel has no precedential effect today.
On rehearing en banc, our court resolved that case without determining whether a suspicionless search of a parolee’s residence violated the Fourth Amendment: “We need not and do not decide ... whether suspicionless parole searches violate the Fourth Amendment.” United States v. Crawford, 372 F.3d 1048, 1054 (9th Cir.2004) (en banc). It became unnecessary to reach that issue in Crawford because we concluded that, even assuming that reasonable suspicion was required to search a parolee’s residence, the confession later given by the defendant in that case was too far removed from the allegedly improper search -to require suppression of Crawford’s confession.
Separately, though, five members of that Crawford en banc panel, most of whom also joined in the Crawford en banc panel majority opinion authored by Judge Gra-ber, proceeded to address the issue of a parolee’s Fourth Amendment rights and reached a conclusion different from that of the two judges who make up the majority in the current case. Specifically, as expressed in the separate concurring opinion of Judge Trott, those five judges concluded that a law enforcement officer’s search of a parolee’s residence is reasonable so long as the search is not “arbitrary, capricious, or harassing.” Id. at 1063 (Trott, J., concurring). In so concluding, the Crawford concurrence explicitly rejected the notion, embraced by the majority in the current case, that a parolee cannot be searched absent a degree of individualized suspicion. Id. at 1076. I was one of the five judges who joined ■ Judge Trott’s concurring opinion, and I continue to adhere to the position expressed there. Thus, I disagree with the reasoning and conclusion on that subject expressed in the majority opinion in the current case. Rather than repeat what Judge Trott has already written, I incorporate his discussion by reference. It is important to note that the view expressed in the Crawford concurrence, though not adopted by the en banc panel in that case, was not rejected by our court in that case, either.
As it happens, the two judges who support the majority opinion in the current case were also members of the en banc panel in Crawford.[2] They were two of the three judges who joined a dissenting opin *1172 ion in Crawford, authored by Judge William Fletcher. 372 F.3d at 1082. The principal thrust of that dissent was the same position asserted by the majority opinion here, that a parolee search without reasonable suspicion violated the Fourth Amendment. That position was not adopted by the remaining eight members of the 11-judge en banc panel.
Having joined a dissenting opinion which took the same position just a few months ago, my colleagues are well aware that the “constitutional right” which they purport to identify in this case could not fairly be characterized as “clearly established,” under the Saucier test. The history of the Crawford case makes such a conclusion impossible.
Under these circumstances, the majority’s digression to assert that the Constitution requires reasonable suspicion to search a parolee, regardless of the terms of parole, amounts to no more than a frolic. Since no such “right” was “clearly established,” the purported existence of such a right could never support the resolution of this case.
The majority attempts .to evade this problem by stating that it was “clearly established that a parolee [is] not stripped of all Fourth Amendment protection whatsoever.” Ante at 1168. But that is a far cry from the proposition that it was “clearly established” that a parolee search requires reasonable suspicion. Judge.Trott’s concurring opinion in, Crawford, which staked out a position opposed to that of the majority here, illustrates. Judge Trott did not assert that a parolee was stripped of all Fourth Amendment protection. To the contrary, he specifically recognized that a parolee search could not be “arbitrary, capricious, or harassing.” 372 F.3d at 1063. That a parolee may benefit from Fourth Amendment protection does not necessarily mean that a search cannot be conducted without reasonable suspicion. For the majority opinion here to say that it was clearly established that a parolee has not lost all Fourth Amendment protection falls far short of what is needed to sustain the rule it attempts to announce.
Moreover, the cases cited in the majority opinion do not actually support the new doctrine it announces here, because the question of whether a parolee could be searched or detained on less than reasonable suspicion did not have to be resolved in those cases, just as it did not have to be resolved in Knights. See Griffin v. Wisconsin, 483 U.S. 868, 880, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (concluding that search of probationer’s home was reasonable within the meaning of the Fourth Amendment); United States v. Guagliardo, 278 F.3d 868, 873 (9th Cir.2002) (affirming probation requirement requiring probationer to submit to searches without considering whether particular search violated the Fourth Amendment); United States v. Conway, 122 F.3d 841, 845 (9th Cir.1997) (determining that officers had probable cause to search probationer’s residence); United States v. Davis, 932 F.2d 752, 760 (9th Cir.1991) (concluding that police had reasonable suspicion to conduct search); Latta v. Fitzharris, 521 F.2d 246, 252 (9th Cir.1975) (finding that search was not unreasonable).
Since the “right” purportedly announced by the majority opinion here could not be held to have been clearly established in January 2000, the recognition of such a “right” cannot be the basis for denying Defendants’ qualified immunity defense and for affirming the judgment of the district court. The majority’s assertion that a constitutional right of Moreno was violated because reasonable suspicion is required to justify a search and seizure of a parolee is simply irrelevant to the resolution of this case.
*1173 We have held that “ ‘where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.’ ” Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir.2003) (per curiam), quoting United States v. Johnson, 256 F.3d 895, 914 (9th Cir.2001) (en banc). But see Miller v. Gammie, 335 F.3d 889, 902 (9th Cir.2003) (Tashima, J., concurring) (arguing that when a three-judge panel reaches a conclusion that is unnecessary to the resolution of the case, this conclusion is non-binding dicta). As discussed above, the majority’s conclusion in this case that a law enforcement officer must, at minimum, have a reasonable suspicion before searching or detaining a parolee has nothing to do with the resolution of this case, and so it should not qualify as germane.
Furthermore, as the officers were not aware of Moreno’s parole condition at the time of his search and detention, the facts in this case only present the hypothetical question of what level of suspicion is required when an officer searches or detains a parolee and knows of the parole status and of the terms or conditions of parole which appear to authorize a search without warrant or “reasonable suspicion.” This court has previously observed that “ ‘an opinion advising what the law would be upon a hypothetical state of facts’ ” is advisory and thus, non-binding. See Cornejo-Barreto v. Siefert, 379 F.3d 1075, 1082 (9th Cir.2004) (quoting North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)), vacated as moot on other grounds 389 F.3d 1307 (9th Cir.2004).
Consequently, as the majority’s statement that reasonable suspicion is required to justify a search and seizure of a parolee is unnecessary to resolve this case and is a discussion regarding a hypothetical set of facts, that announcement should be treated as a bit of dictum, which should have no binding or precedential impact in future cases. That question will not be resolved by this panel, of course. The next panel of this court to encounter the underlying question may consider it. But I feel compelled to make clear my disagreement with the view expressed in the majority opinion and suggest that it be both read with caution and paid no heed in the future.

. As the majority notes, we have treated probationers and parolees the same for purposes of Fourth Amendment analyses. See ante at 1159 (citing United States v. Kincade, 379 F.3d 813, 817 n. 2 (9th Cir.2004)).

. Although that might be unremarkable in other circuits, our court utilizes a "limited en banc” court system, under which an en banc panel consists of 11 judges and does not include all active judges of our court. See 9th Cir. R. 35-3.