**MARK H. and Rie H., Individually and as Guardians Ad Litem for Michelle H. and Natalie H., minors, Plaintiffs,**

v.

**Paul LEMAHIEU, in his official capacity as Superintendent of the Hawaii Public Schools; Elsie Tanaka, in her official capacity as Principal of Kipapa Elementary School; Judith Saranchock, in her official capacity as Principal of Ala Wai Elementary School; Peter Chun, in his official capacity as Principal of Hokulani Elementary School; Haroldeen Wakida, in her official capacity as Principal of Aliʻiolani Elementary School; and Department of Education, State of Hawaii, Defendants.**

No. CV00–282–MLR.

United States District Court,
D. Hawaiʻi.

May 26, 2005.

Michael K. Livingston, Stanley E. Levin, Davis Levin Livingston Grande, Keith H.S. Peck, Peck & Assoc., Honolulu, HI, for Plaintiffs.

John T. Komeiji, Randall Y. Yamamoto, Watanabe Ing Kawashima & Komeiji, George S.S. Home, Holly T.M. Shikada, Honolulu, HI, for Defendants.

## OPINION

REAL, District Judge.

Plaintiffs Mark H. and Rie H. brought this action on behalf of themselves and their two minor children, Michelle H. and Natalie H., to recover money damages for alleged failures within the Individuals with Disabilities in Education Act (IDEA). The sole remaining question is whether Plaintiffs are entitled to money damages under Section 504 of the Rehabilitation Act of 1973 (Section 504) for the denial of a "free appropriate public education" under the IDEA.

The Court, after studying the briefs filed by the lawyers, hearing the arguments of counsel, and researching the legislative history of the IDEA, 20 U.S.C. § 1400 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, now grants Defendants' motion for summary judgment. Specifically, the Court finds that there are no rights, procedures, or remedies available under § 504 for violations of the IDEA's affirmative obligations, and that even if § 504 was available, Defendants would be entitled to judgment as a matter of law.

## I. BACKGROUND

Michelle H. and Natalie H. are the children of Mark H. and Rie H. Michelle H. was born on February 15, 1991, and Natalie H. was born on August 3, 1992.

In 1994, Michelle and Natalie, then ages three and two respectively, were diagnosed as autistic. Both girls were certified as eligible under the IDEA due to their diagnoses. As a result of their IDEA certification, both girls were placed in special education programs.

On June 6, 1994, an Individual Family Service Plan was developed for Natalie as a counterpart to her Individual Education Program (IEP), and as part of the IDEA program to provide a free appropriate public education. On July 11, 1994, an IEP was developed for Michelle. As the girls progressed in their education, further IEPs were prepared to monitor the girls' educational progress.

Michelle was initially placed in a fully self-contained special education class at Kipapa Elementary School. Natalie was placed in the Department of Health's "Zero to Three" program. In 1995, Natalie joined her sister at the Kipapa School, and stayed until the family moved in 1996.

In 1996, Michelle was placed at Aliʻiolani School with Nadine Chen, a special education teacher with experience and training in teaching children with autism. During this time at Aliʻiolani School, Ms. Chen was assisted by Cynthia Makins. Ms. Makins had approximately 25 years of experience in elementary education and was completing a RISE program to qualify her to teach special education. Ms. Makins attended several workshops on autism and worked closely with Ms. Chen.

At the same time, from 1996 through 1998, Natalie was placed in special education classes at Ala Wai Elementary School and Hokulani Elementary School.

Natalie's teachers were not specifically trained to work with children suffering from autism. Later, at the suggestion of Dr. Daniel LeGoff, Natalie was placed in the same classroom with Michelle at Ali'iolani School.

Although Plaintiffs never claimed discrimination on account of their children's disabilities at the IEP meetings, disputes arose as to the provision of mental health and educational services under the IDEA. On December 16, 1999, the parents filed a request for an administrative hearing pursuant to the IDEA, 20 U.S.C. § 1415, alleging that their children had been denied a free appropriate public education.

At the January 2000 administrative hearing, the hearings officer found that:

> Through the years [the State of Hawaii, Department of Health] has authorized many services for the girls, but a significant problem has been the delivery of services. Although they may have been authorized there has been up to the present, irregular delivery. No IEP to the present time includes all of the mental health services that were authorized or agreed upon by the IEP team. Mental health "inserts" have been controversial. Coordination of services between [the State of Hawaii, Department of Health and the State of Hawaii, Department of Education] has been erratic.

Ultimately, the hearings officer found that the students were not provided a free appropriate public education in accordance with the IDEA. The officer based this determination upon defects in the IEPs, and procedural errors. Accordingly, the hearings officer issued an order requiring the Defendant Department of Education to take certain actions to ensure that Michelle and Natalie receive a free appropriate public education. The Defendants have taken actions to implement the hearings officer's order, and currently spend approximately $250,000 per year on each student for their educational needs.

Despite the remedial award provided by the IDEA administrative hearing, the Plaintiffs filed a Complaint in this Court on April 14, 2000, claiming an entitlement to retrospective tort-like damages under the IDEA and Section 504.[1] Plaintiffs' claims are based entirely upon the failures within the IDEA, previously addressed by the administrative hearing.

On July 24, 2001, Chief Judge David Alan Ezra, granted summary judgment on the IDEA claims. Thus, the sole remaining claims in this motion for summary judgment are Section 504 claims for emotional distress and punitive damages.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides for summary judgment where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is mandated when, after adequate discovery, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

---

1. Plaintiff sues Paul Lemahieu, in his official capacity as Superintendent of the Hawaii Public Schools; Elsie Tanaka, in her official capacity as Principal of Kipapa Elementary School; Judith Saranchock, in her official capacity as principal of Ala Wai Elementary School; Peter Chun, in his official capacity as Principal of Hokulani Elementary School; Haroldeen Wakida, in her official capacity as Principal of Ali'iolani Elementary School; and the Department of Education, State of Hawaii.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden of proving that there is no genuine issue of material fact, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court views the evidence in the light most favorable to the nonmoving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630–631 (9th Cir.1987). If a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

As mentioned above, Plaintiffs merely recast their IDEA claim as a damages claim under the Rehabilitation Act, contending that a denial of a free appropriate public education under the IDEA constitutes discrimination within § 504. Plaintiffs' assertion of rights, procedures, or remedies under § 504, however, is incompatible with the Congressional intent evidenced by the legislative history of the Rehabilitation Act and the IDEA.

### A.

The IDEA is a comprehensive State grant program, within the Education Code, aimed at assisting state and local educational agencies in educating disabled children. The Act provides that State and local educational agencies receiving assistance under the IDEA "shall establish and maintain procedures ... to ensure children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." 20 U.S.C. § 1415(a).

The IDEA then proceeds to provide comprehensive procedural safeguards for disabled children and their parents to guarantee the child receives a free appropriate public education. *See* 20 U.S.C. § 1415 *et seq.* The required procedures include an opportunity for "(1) examination of all relevant records pertaining to evaluation and educational placement of their child; (2) prior written notice whenever the responsible educational agency proposes, or refuses, to change the child's placement; (3) an opportunity to present complaints concerning any aspect of the local agency's provision of a free appropriate public education; and (4) an opportunity for an 'impartial due process hearing' with respect to any such complaints." *Robb v. Bethel Sch. Dist. # 403,* 308 F.3d 1047, 1049 (9th Cir.2002). Any party aggrieved by the findings and decision made in the impartial due process hearing may obtain additional administrative review, and ultimately judicial review. 20 U.S.C. § 1415(g) and (i).

The principal purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs ... [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d). It is apparent that the IDEA provides the comprehensive procedure to accomplish this purpose. *See Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).

In *Smith v. Robinson,* the Supreme Court held that the Education of the Handicapped Act (EHA), the predecessor to the IDEA, was the exclusive remedy for violations alleged within the EHA. 468 U.S. at 1009, 104 S.Ct. 3457. The plain-

tiffs in *Smith* sought attorney's fees under the Rehabilitation Act for violations of the EHA right to a free appropriate public education. At that time, attorney's fees were not available within the text of the EHA statute. After finding Congress' intent clear, the Court stated that the legislative history "indicates that Congress perceived the EHA as the most effective vehicle for protecting the constitutional right of a handicapped child to a public education." *Id.* at 1012–1013, 104 S.Ct. 3457. Specifically, the Court held that "Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA by resort to the antidiscrimination provision of § 504 [to receive attorney's fees not available within the EHA]." *Id.* at 1019, 104 S.Ct. 3457.

■ In response to the *Smith* case, Congress amended the EHA "to authorize the award of reasonable attorneys' fees to certain prevailing parties, and to clarify the effect of the Education of the Handicapped Act on rights, procedures, and remedies under other laws relating to the prohibition of discrimination." S.Rep. No. 99–112, at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1798. In addition to explicitly providing for awards of attorney's fees, Congress added what is now IDEA § 1415(1). *See* Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796 (1986). The current § 1415(1) provides that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, . . . title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this

subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Despite this language, it is clear to this Court that Congress intended that the IDEA procedures remain the exclusive remedy for correcting problems within the terms of the act, and for deciding what is best suited to a free appropriate public education. As detailed below, a contrary conclusion would undermine the IDEA and conflict with Congressional intent.

### B.

Unlike the IDEA, which is contained in the Education Code, § 504 of the Rehabilitation Act is part of a State grant program contained in the Labor Code. This distinction illustrates what the legislative history confirms, namely, that the Rehabilitation Act was enacted to deal with vocational training and jobs, not the education of disabled children. *See* S.Rep. No. 102–357, at 2–4 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3712, 3713–3715.

The principal purpose of the Rehabilitation Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society, through—[the Workforce Investment Act of 1998] . . . and to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities . . . and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living." 29 U.S.C. § 701(b).

Where the IDEA guarantees a disabled child's right to a free appropriate public education, § 504 of the Rehabilitation Act simply prohibits discrimination on the ba-

sis of disability. *Smith,* 468 U.S. at 1016–1017, 104 S.Ct. 3457. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides in pertinent part:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

The Supreme Court has emphasized that § 504 does not require affirmative action on behalf of disabled individuals, it merely requires the absence of discrimination against those individuals. *See Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

Here, as in *Smith,* the Plaintiffs assert that the regulations promulgated under § 504 create affirmative obligations. Specifically, the Plaintiffs seek to enforce the § 504 regulations which adopt IDEA's requirement of providing a free appropriate public education. Thus, Plaintiffs contend that § 504 is available to provide rights, procedures, and remedies to correct what is in essence a mere violation of a free appropriate public education under the IDEA. In *Smith,* the Supreme Court reserved judgment on the "extent of the guarantee of a free appropriate public education Congress intended to impose under § 504 [regulations.]" 468 U.S. at 1019, 104 S.Ct. 3457. However, the Supreme Court concluded that "we are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the [IDEA] by resort to the general antidiscrimination provision of § 504." *Id.*

In the view of this Court, the Plaintiffs may not assert claims under § 504 for conduct not prohibited by the statute itself. *See Jackson v. Birmingham Bd. of Educ.,* 544 U.S. ——, 125 S.Ct. 1497, 1507, n. 2, 161 L.Ed.2d 361 (2005). The Supreme Court reached this issue, of whether affirmative obligations may be imposed by regulations, within the context of the general antidiscrimination provision of Title VI of the Civil Rights Act of 1964. *See Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); 42 U.S.C. § 2000d. In identical language to § 504 of the Rehabilitation Act, section 601 of Title VI prohibits discrimination on the basis of race. *See* 42 U.S.C. § 2000d; 29 U.S.C. § 794 (both admonishing that "no person ... shall ... be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). In *Sandoval,* the Supreme Court held that a private right of action was unavailable to enforce the regulations promulgated to effectuate the Title VI antidiscrimination provision. 532 U.S. at 285, 121 S.Ct. 1511. The Supreme Court noted that "[i]t is clear ... that the disparate-impact regulations do not simply apply § 601—since they indeed forbid conduct that § 601 permits—and therefore clear that the private right of action to enforce § 601 does not include a private right to enforce these regulations." *Id.* Therefore, under the reasoning of *Sandoval,* the private right of action to enforce § 504 does not include a private right to enforce the regulations promulgated to effectuate § 504.

In this case, as in *Sandoval,* the Plaintiffs seek to bring suit under an antidiscrimination statute for the violation of regulations intended to effectuate that statute. *See* 34 C.F.R. § 104.1 *et seq.* While the § 504 *regulations* attempt to impose the IDEA's affirmative obligations on the States, the *statute* merely prohibits intentional discrimination. *See Southeastern,* 442 U.S. at 411, 99 S.Ct. 2361. Clearly, failing to provide a free appropriate public

education is not conduct that § 504 forbids. Thus, the Plaintiffs do not have any rights, procedures, or remedies available to them under § 504 for a violation of regulations adopting the IDEA right to a free appropriate public education.[2]

## C.

Allowing a damage remedy under § 504 for violations of the IDEA right to a free appropriate public education would supplant the IDEA and violate Congress' intent. As stated above, there is no suggestion that § 504 adds anything to Plaintiffs' substantive rights to a free appropriate public education. Rather, Plaintiffs seek to evade Congress' intention to not provide money damages for problems experienced within the IDEA State grant program.

Congress neither provided nor intended for monetary damages to be available under the IDEA. *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir.1999). In *Smith v. Robinson,* the Supreme Court held that "a plaintiff may not circumvent or enlarge on the remedies available under the EHA by resort to § 504." 468 U.S. at 1021, 104 S.Ct. 3457. Despite this, Plaintiffs contend that the addition of what is now IDEA § 1415(1) indicates Congress' intent to allow resort to § 504 remedies for IDEA problems. Contrary to Plaintiffs' reading of § 1415(1), this Court finds that the 1986 amendments to the EHA, and the legislative history, do not evince an intent to allow plaintiffs to circumvent the IDEA restriction against monetary damages in suits merely alleging the denial of a free appropriate public education.

As previously noted, Congress enacted the Handicapped Children's Protection Act of 1986 to clarify the Congressional intent of the EHA. Congress was responding to the *Smith v. Robinson* decision which held that plaintiffs could not use § 504 of the Rehabilitation Act to obtain attorney's fees not provided for within the EHA statute. *See* S.Rep. No. 99–112, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1799. The legislative history of the Handicapped Children's Protection Act specifically states: "The situation which has resulted from the *Smith v. Robinson* decision was summarized by Justices Brennan, Marshall, and Stevens in their dissenting opinion: 'Congress will now have to take the time to revisit the matter.'" *Id.* at 1799.

In response to the *Smith* dissent, Congress clearly established that it was revisiting the matter to specifically add a section providing for the award of reasonable attorney's fees to prevailing parents in EHA civil actions. *See* 20 U.S.C. 1415(i)(3). Congress also added what is now 20 U.S.C. § 1415(1), which provides:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, ... title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as

2. This is not to suggest that § 504 is unavailable to remedy a situation where children have been excluded from participation in a State's IDEA program, "solely by reason of her or his disability." The Rehabilitation Act should allow children to seek entry into any federally financed program intended to ad-

vance the opportunities of the disabled. However, once a child is in the IDEA program, the IDEA statute provides the exclusive relief for problems experienced in the administration of that program. *See* 20 U.S.C. § 1415 *et seq.*

would be required had the action been brought under this subchapter.

The legislative history overwhelmingly indicates that Congress did not intend this section to allow IDEA plaintiffs to collect monetary damages in contravention of the IDEA.

Despite the inclusion of what is currently § 1415(1), Congress never intended to extend § 504 monetary damages to IDEA plaintiffs. Not a single sentence in the *Smith* dissent, cited by Congress when amending the EHA, contains any mention of monetary damages under § 504. *Smith*, 468 U.S. at 1021–31, 104 S.Ct. 3457. Rather, the dissent focuses exclusively on the argument that a successful plaintiff in an IDEA case ought to be able to obtain attorney's fees under § 504 of the Rehabilitation Act. *Id.* Justices Brennan, Marshall, and Stevens stated that "we must preserve those aspects of §§ 504 and 1983 that are not in irreconcilable conflict with the EHA." *Id.* at 1024, 104 S.Ct. 3457. To allow monetary damages here would irreconcilably conflict with the IDEA.

The legislative history indicates that Congress never even considered the potential availability of monetary damages when it passed the Handicapped Children's Protection Act, including § 1415(1). *See* S.Rep. No. 99–112 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798. Monetary damages are not mentioned in either the Senate Report, the House Conference Report, or the Signing Statement by the President. *Id.* In fact, the "Budget Estimate" for the Handicapped Children's Protection Act re-

fers exclusively to the impact from an authorized allowance of attorney's fees.[3] Further, the Statement by the President solely notes that the purpose of the amendment is to "[provide] for the award of reasonable attorneys' fees to the parent or guardian of a handicapped child who prevails in a suit under the [EHA]." *Id.* at 1811.

The 1986 amendment to provide for attorney's fees, and clarify the effects of the EHA, demonstrates that Congress knows how to provide the remedies they intend to authorize. *See* 20 U.S.C. § 1415(i)(3). If Congress intended to allow monetary damages for flaws in the provision of a free appropriate public education, they would have authorized damages as explicitly as they authorized attorney's fees. Congress did not authorize or intend to authorize monetary damages for the failure to provide a free appropriate public education.

The addition of § 1415(1) merely reinforces the continuing viability of "other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(1). As stated above, § 504 of the Rehabilitation Act would obviously be available to a disabled child suing to obtain entry into the IDEA program itself. However, allowing resort to § 504 to obtain damages for failures within the IDEA program would irreconcilably conflict with the IDEA, and subvert Congressional intent.

### D.

The Plaintiffs' remedies under the IDEA and § 504 are more generally con-

---

**3.** The Congressional Budget Office's letter to Congress on the federal costs of the Handicapped Children's Protection Act states:

Based on our analysis, there would be no increase in federal costs as a result of this bill ... This bill would authorize the award of reasonable attorneys' fees to prevailing parties that successfully litigate cases under the amended [EHA]. In the past, successful-

ly litigated cases ... had relied on the authority of other laws in awarding attorneys' fees. The Supreme Court recently ruled, however, in Smith v. Robinson that the [EHA] remedies may not be enlarged to include items such as attorneys' fees by resorting to other laws.

*See* S.Rep. No. 99–112, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1800.

strained by the scope of Congressional regulatory power under the spending clause. Both the IDEA and § 504 are State grant programs enacted pursuant to Congress' spending power. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley,* 458 U.S. 176, 190, n. 11, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Lovell v. Chandler,* 303 F.3d 1039, 1051 (9th Cir.2002). Spending power legislation is "in the nature of a contract." *Pennhurst State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). As the Supreme Court has stated, "The legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Id.* Since the Rehabilitation Act does not contractually obligate a state to provide an IDEA free appropriate public education, § 504 damages for violations of IDEA rights cannot be obtained.

■ Congress' power to regulate under the spending clause is limited to the purposes for which those funds are granted. *See Pennhurst,* 451 U.S. at 17, 101 S.Ct. 1531 ("There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it."). The federal-State Rehabilitation Act "contract" obligates a State to provide vocational rehabilitation under the terms set out in the Labor Code. The obligations agreed to under that contract do not include providing an IDEA free appropriate public education. *See* 29 U.S.C. § 701 *et seq.* Thus, the Rehabilitation Act's rights procedures, and remedies are limited to the specific purposes knowingly and voluntarily accepted by a State, as set out in the Labor Code. Undermining

the IDEA's own comprehensive rights, procedures, and remedies is beyond the scope of the Rehabilitation Act's federal-State contract.

■ Correspondingly, the Eleventh Amendment also constrains Plaintiffs' ability to receive money damages for the alleged failure to provide a free appropriate public education. The Eleventh Amendment prohibits a citizen from suing a state for monetary damages in federal court without its consent. *Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1184 (9th Cir.2003). However, States may voluntarily waive Eleventh Amendment immunity in return for federal funds, when the receipt of funds is conditioned on a waiver of sovereign immunity. *Id.* at 1186.[4] To receive funds under either the IDEA or the Rehabilitation Act, a State must waive its sovereign immunity and provide the mandated program. *See* 20 U.S.C. § 1403; 42 U.S.C. § 2000d–7. That waiver is defined by the language of the particular program under which the funds are advanced.

■ The Supreme Court has held that there is no Constitutional right to a free public education. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Neither is there a Constitutional right to an education which provides for the special needs of disabled children. Laudably, Congress passed spending clause legislation "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). However, this right is created by statute, and the Eleventh Amendment confines an individual's avenues for enforcement to those voluntarily assumed by the State under the IDEA statute.

---

4. Although not implicated here, Congress may also abrogate a State's sovereign immunity through Congress' remedial power under Section Five of the Fourteenth Amendment. *See Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

■ As noted earlier, the IDEA statute does not provide monetary damages as a remedy. *Witte,* 197 F.3d at 1275. Therefore, under the IDEA contract, a State does not voluntarily waive Eleventh Amendment Immunity with respect to monetary damages. Moreover, under the Rehabilitation Act, a waiver to provide monetary damages is limited in scope to remedying violations of the Rehabilitation Act-funded program. *See Vinson v. Thomas,* 288 F.3d 1145, 1156 (9th Cir.2002) ("By accepting federal Rehabilitation Act funds, the [Defendant] waived its Eleventh Amendment immunity as to [Plaintiff's] claim under section 504 of the Rehabilitation Act."). This Court is not free to impose a remedy beyond the scope of a spending program's Eleventh Amendment waiver.

Recognizing that success in providing the right program to overcome a disability is humanly impossible to quantify, the detailed provisions of the IDEA measure the quasi-contractual obligations of a State that receives funds not from the Rehabilitation Act, but rather from implementation of the IDEA under the Education Code. The spending clause of the Constitution provides no further power for the Federal Government to make demands beyond the quasi-contractual obligation under the IDEA or the Rehabilitation Act.

### E.

Finally, even if Plaintiffs were able to assert a § 504 claim for IDEA failures, the Plaintiffs do not present any evidence that they were intentionally discriminated against, "solely by reason of [their] disability."

■ Section 504 of the Rehabilitation Act provides that:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794. To recover money damages under the Rehabilitation Act, "a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir.2001). In Rehabilitation Act cases, the Ninth Circuit utilizes a "deliberate indifference" standard to determine if there has been intentional discrimination. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the [sic] likelihood." *Id.* at 1139. In this case, the Plaintiffs fail to provide sufficient evidence to create a triable issue as to whether Defendants acted with deliberate indifference in the provision of a free appropriate public education under the IDEA.

Under the IDEA, States receiving federal IDEA funds are required to "establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." 20 U.S.C. § 1415. Viewing the facts in the light most favorable to the Plaintiffs, a rational trier of fact could not find that the Defendants acted with "deliberate indifference" to the Plaintiffs' rights under the comprehensive IDEA statute. Rather, the Defendants followed all of the detailed IDEA procedural safeguards.

In December of 1999, Michelle and Natalie's parents filed a request for an administrative hearing, alleging that their children had been denied a free appropriate public education under the IDEA. In January of 2000, an administrative hearing was held to determine whether the Department

of Education was providing a free appropriate public education under the IDEA. Ultimately, the hearings officer found that Michelle and Natalie had been denied a free appropriate public education. The hearings officer's "Decision and Order" mandated certain prospective-relief measures as contemplated by the IDEA.

The administrative hearing "Decision and Order" demonstrates that, rather than acting with deliberate indifference, the State Department of Education fully complied with the IDEA procedures for ensuring a free appropriate public education. *See* 20 U.S.C. § 1415. There are no triable issues of fact as to whether the Defendants had knowledge that a harm to a federally protected right was likely, or that the Defendants failed to act upon that likelihood. The only federally protected right at issue, is the right to a free appropriate public education as provided for within the IDEA.[5] As discussed above, the IDEA procedures are the exclusive avenue to correct grievances within the IDEA. This process worked entirely as intended. The Plaintiffs were not excluded from the participation in the IDEA, denied the benefits of the IDEA, or subjected to discrimination under the IDEA. As contemplated by the IDEA statute, the hearings officer determined that the Defendants were not providing a free appropriate public education under the IDEA statute, and remedied that failure.[6]

The Plaintiffs argue that: "Since a denial of [free appropriate public education] under IDEA by definition constitutes a denial of [free appropriate public education

under § 504 regulations] and thus discrimination under Section 504, the only issue remaining is whether this discrimination was the result of 'deliberate indifference.'" [Plaintiffs' Motion for Partial Summary Judgment as to Liability, Aug. 6, 2004, p. 17]. This argument discloses the flaw in the Plaintiffs' understanding of both discrimination and the right of action under § 504.

First, since the right to a free appropriate public education derives from the federal-State IDEA contract, § 504 would only be available to correct intentional discrimination within the framework of the IDEA. The Plaintiffs have not presented evidence to create a triable issue that they were excluded from participation in the IDEA, denied the benefits of the IDEA, or subjected to discrimination under the IDEA, solely by reason of their disability. *See* 29 U.S.C. § 794. The Plaintiffs were secured the benefits of the IDEA by the State's compliance with IDEA's "Procedural Safeguards." A mere denial of a free appropriate public education, later corrected by IDEA's "Procedural Safeguards," is not discrimination. *See* 20 U.S.C. § 1415.

Second, as discussed in section B of this opinion, the private right of action to enforce § 504 does not include a private right to enforce the regulations promulgated to effectuate § 504. Rather a private right of action may only be used to correct the intentionally discriminatory conduct the statute prohibits. *See Jackson,* 125 S.Ct. at 1507 n. 2.

---

**5.** Section 504 does not require affirmative action to provide a free appropriate public education, it solely prohibits discrimination. *See Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

**6.** Each child is now being provided over $250,000 in educational services each year. This IDEA mandated remedy further illuminates the point that money damages were not intended under the IDEA. Rather, the IDEA is self-correcting, allowing for compensatory measures through grants of additional or remedial services.

This Court reiterates its own finding that there are no rights, procedures, or remedies available under § 504 for violations of the IDEA's affirmative obligations. The Plaintiffs misconstrue the Ninth Circuit's decision in *Witte v. Clark County School District* in their attempt to garner monetary damages. 197 F.3d 1271. In *Witte,* the Ninth Circuit held that IDEA exhaustion was not required when the Plaintiff was seeking "only monetary damages which is not 'relief that is available under' the IDEA." *Id.* at 1275. However, in *Witte,* "neither the genesis nor the manifestations of the abuse were educational," rather "plaintiff's allegation centered around physical abuse and injuries." *Robb v. Bethel Sch. Dist. # 403,* 308 F.3d 1047, 1052 (9th Cir.2003). Unlike in *Witte,* the Plaintiffs' in this case allege educational injuries which are to be remedied exclusively within the IDEA. *See Id.*

To the extent that Plaintiffs make an argument that they were discriminated against by "systemic failures" within the IDEA, this Court finds that the Plaintiffs have not provided any evidence of deliberate indifference on behalf of the Defendants. As the background section of this opinion and the findings of the hearings officer make clear, the children were provided with Individual Education Programs and special education since their initial diagnoses. All of the IDEA "Procedural Safeguards" were also provided. Plaintiffs' success in the administrative hearing process demonstrates the *success* of the IDEA. No rational trier of fact could determine on these facts, that the Plaintiffs were discriminated against "solely by reason of [their] disability."

Also, if there was evidence of "systemic failures" within the IDEA, these Plaintiffs are not the appropriate party to bring suit. The IDEA does not provide for private attorneys general to enforce State compliance. *See* 20 U.S.C. § 1400 *et seq.* Rather, a comprehensive procedure is made for the Secretary of Education to ensure compliance with the principles embodied in IDEA. 20 U.S.C. § 1416. When substantial intervention is necessary, the IDEA allows the Secretary of Education to recover funds, withhold payments, refer the case to the Office of the Inspector General at the Department of Education, or refer the matter for appropriate enforcement action, which may include referral to the Department of Justice. 20 U.S.C. § 1416(e)(3). Any State "dissatisfied with the Secretary's action with respect to the eligibility of the State ... may ... file with the United States court of appeals for the circuit in which such State is located a petition for review of that action." 20 U.S.C. § 1416(e)(8).

The gravamen of Plaintiffs' claims under § 504 is simply that Defendants did not agree to procedures that they, the parents, felt were needed for their children. It strains the logic of the requirement for intentional discrimination to say that a dispute of educational procedures, adopted pursuant to the IDEA, is intentional discrimination under § 504. Similarly, it undermines Congress' clear intention not to provide monetary damages in the IDEA, to then allow monetary damages under § 504.

## IV. CONCLUSION

Autism itself is not a fully understood condition. The IDEA aims to provide educational solutions for children, even in situations where there is a lack of agreement between medical and educational professionals on what constitutes an appropriate education. Congress did not intend to bankrupt IDEA programs by opening States up to unconstrained damage awards whenever an administrative process finds that different procedures should be em-

ployed. Rather, Congress intended to attempt to provide actual solutions to the difficulties that States were experiencing in educating disabled children. For the reasons stated above, this Court GRANTS Defendants' Motion for Summary Judgment, and DENIES Plaintiffs' Motion for Partial Summary Judgment.

This opinion shall be deemed to be the findings of fact and conclusions of law required by Federal Rules of Civil Procedure Rule 52.